627 So.2d 188 (1993)
PREMIER BANK, NATIONAL ASSOCIATION and First Federal Savings & Loan Association of Lake Charles, Plaintiffs-Appellants,
v.
Roy Lee STOUT & Ruth Delaine Cryer Stout individually and in their capacity as Trustees, Defendants-Appellees.
No. 93-259.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1993.
Rehearing Denied January 4, 1994.
Robert Joseph Tete, Lake Charles, for Premier Bank, et al.
Helton Gayle Marshall, Lake Charles, for Roy Lee Stout, et ux.
Before DOMENGEAUX, C.J., and LABORDE and COOKS, JJ.
*189 COOKS, Judge.
In this revocatory action, First Federal Savings & Loan Association and Premier Bank, National Association appeal a trial court's judgment sustaining exceptions of prescription filed by Roy Lee Stout and Ruth Delaine Cryer Stout individually and in their capacity as Trustees of the Stout Family Trust resulting in dismissal of the suit.

PROCEDURAL HISTORY
The Stouts established the Stout Family Trust by notarial act duly recorded on September 7, 1988. They transferred $1,500.00 to the Trust. In the Trust instrument, the Stouts were named as income beneficiaries and other family members were named as principal beneficiaries. The terms of the Trust further provided:
"Additional property may from time to time be transferred by the Grantor or by any other person to the Trustee(s) with their consent and such property shall thereupon become a part of the Trust estate and shall be held, managed, invested and reinvested and disposed of on the same terms and conditions as the property originally transferred."
First Federal Savings & Loan filed suit against the Stouts to collect sums due on three promissory notes secured by mortgages. Following rendition of judgment against the Stouts and foreclosure sale of the properties securing the notes, the bank filed three petitions for deficiency judgments against the Stouts which were signed on July 24, 1989 and officially filed on August 1, 1989.
Premier Bank also filed suit against the Stouts seeking collection of a promissory note (secured by real estate) executed, as stated by appellees in brief, on May 4, 1989. As a result of this suit, judgment was rendered against the Stouts on November 9, 1990. The record does not disclose whether Premier Bank perfected full foreclosure on the property securing the note and thereafter obtained a deficiency judgment for any balance due against the Stouts.
However, Premier Bank and First Federal Savings filed the present revocatory action seeking to revoke the $1,500.00 transfer made by the Stouts to the Trust on September 2, 1988 which was recorded on September 7, 1988. Responding, the Stouts individually and as Trustees of the Stout Family Trust filed exceptions of prescription to the banks' claims. At the ensuing hearing, the Stouts argued the revocatory action was not filed within one year of the time the banks learned or should have learned of the transfer to the Trust as provided by LSA C.C. article 2041. They pointed out the Trust instrument was recorded on September 7, 1988 in the Public Records of Calcasieu Parish; and thus, they urged, the banks "should have learned" of the existence of the trust on this date according to the public record doctrine. The trial judge agreed and dismissed the suit. The banks have filed the present appeal noting the parties stipulated at the hearing that Premier Bank first learned of the Trust's existence on April 18, 1991 at a judgment debtor hearing while questioning the Stouts; and First Federal Savings & Loan acquired knowledge of the Trust on August 22, 1991, after reviewing the transcript of the judgment debtor examination conducted earlier by Premier Bank. All parties agreed suit was instituted within one year from the date of the judgment debtor hearing and within three years from the date the Stouts transferred $1,500 to the Trust.

LAW AND ANALYSIS
LSA-C.C. article 2041 as amended in 1984 states:
"The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result." (Emphasis added)
Although the article clearly expresses a revocatory action "must be brought within one year from the time [the creditor] learned or should have learned of the act," the article's revision comments suggest "the prescriptive period should be one year from the day the... [creditor] learned of the harm."
Noting this inconsistency and the article's purpose, as expressed in the revision comments, this court in First Federal Savings & *190 Loan Association of Lake Charles v. Jones, 620 So.2d 408 (La.App. 3 Cir.1993), said:
"La.C.C. art. 2041 is found in Chapter 12, Book III of the Louisiana Civil Code, entitled Revocatory Action and Oblique Action. Section 12 of that chapter deals with the revocatory action and begins with Article 2036, which states in pertinent part: `An obligee has a right to annul an act of the obligor ... that causes or increases the obligor's insolvency'. The comments to that article explain that the article `substitutes an act of the obligor that causes or increases his insolvency for the notion of an act [of] fraud' contained in the source articles. The comments also inform us that the source of the revocatory action can be traced back to the Roman Paulian action.
An in depth discussion of the Paulian or revocatory action can be found in Planiol, Traite' Elementaire De Droit Civil, Vol. 2, Part 1 at 168-185, wherein, in pertinent part, Planiol explains:
300. Formulation of the Rule
The only acts which can give rise to a revocation upon the demand of creditors, given the proper case, are those by which the debtor has impoverished himself;...
310. In What Does Damage Consist
The damage is the determining cause of the action. It consists in the fact that the act of the debtor brings about his insolvency, or augments a pre-existing insolvency. As a consequence, in order for the revocatory action to be possible it is necessary that the act be with reference to property subject to seizure by the creditors, and that it form part of their common pledge....
311. Proof of Damage
Such proof is a condition to the exercise of the revocatory action. It is easy to furnish if the creditors have already `discussed,' that is, seized and sold the property of the debtor; if the price is not sufficient to satisfy all, the damage is not only demonstrated, but has also materialized.... (footnote omitted)
While the modern Civil Code articles have deleted the word `fraud' from their texts, they still embody the principles enunciated by and rooted in the Paulian action."
Thus, tracing the Louisiana revocatory action's origin to the Roman Paulian action, the majority in Jones held "proof of damage (harm)" is essential in presenting a revocatory claim. Citing Rayne State Bank & Trust v. National Union Fire Insurance Company, 483 So.2d 987 (La.1986), the majority also noted the Supreme Court said:
"In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions run `from [the day] on which the injurious words, disturbance, or damage were sustained.'
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910). Thus, until damage was `sustained' by the bank, it had no cause of action, and prescription did not commence to run ..."
Therefore, the majority reasoned the Louisiana revocatory action's prescriptive period does not begin to run until the "damage is sustained" which necessarily occurs after the date of the wrongful act. As a consequence, Jones determined the prescriptive period for a revocatory action involving a collateralized promissory note does not begin to run until the foreclosure sale date because this is the earliest date a creditor should know of the damage sustained by it as a result of the wrongful transfer of the debtor's assets.
Whether we apply the express language of Louisiana Civil Code article 2041, which limits the time period to one year from the time the creditor learned or should have *191 learned of the act or adopt the more expansive reading of the article articulated by the majority in Jones, First Federal Savings & Loan's action to revoke the $1,500 transfer is untimely. According to the record, First Federal secured a deficiency judgment against the Stouts on July 24, 1989. Although the actual foreclosure sale date is not reflected in the record, we presume the sale pre-dated the deficiency proceedings.
Whether the prescriptive period started from September 7, 1988 (when the Trust documents were recorded), the date of foreclosure, or the date of the deficiency judgment (July 24, 1989), more than one year elapsed before First Federal filed this revocatory action on August 20, 1991. Therefore, the trial judge properly granted the exception of prescription dismissing First Federal's action to revoke the $1,500 transfer to the Trust.
Premier Bank obtained a judgment against the Stouts on November 9, 1990 for nonpayment of a promissory note. As noted, this revocatory action was filed on August 20, 1991. While the record does not reflect whether a foreclosure sale occurred thereafter, the sale could not occur prior to the date of the judgment. According to Jones, Premier Bank's revocatory action was timely because the earliest date it should have known of "the damage sustained by it" occurred after the November judgment. The revocatory action was filed within one year of the judgment.[1]
However, we reverse the trial court's judgment dismissing Premier Bank's revocatory action and remand the case for further proceedings to determine whether the promissory note executed by the Stouts in favor of Premier Bank pre-dated the original transfer. LSA-C.C. article 2036 states:
"An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." (Emphasis added)
A revocatory action in Louisiana is granted only to a creditor prejudiced at the time by a transfer. Tate, "The Revocatory Action in Louisiana Law," Essays on The Civil Law of Obligations 133 (Dainow ed. 1969). If Premier Bank contracted with the Stouts after the recordation of the Trust instrument, as defendants assert in brief, then Premier Bank has no cause of action to revoke the $1,500 transfer made by the Stouts to the Trust. Accordingly, we must remand to the trial court with instructions to determine whether the promissory note executed by the Stouts in favor of Premier Bank predated the $1,500 transfer to the Trust.
In reviewing this record, we note Premier Bank and First Federal, in their petition, alleged that the Stout Family Trust allowed the Stouts, as grantors, to continually transfer property to the Trust and thereby secret other property from their creditors. Whether such conveyances occurred after formation of the Trust is not reflected in the record. Therefore, on remand the banks should be afforded reasonable time to conduct discovery and to amend the pleadings, if warranted, to specifically seek revocation of any subsequent transfers made by the Stouts which occurred within one year prior to the filing of the present revocatory action.
Accordingly, the judgment of the trial court granting the exception of prescription dismissing First Federal Savings & Loan's revocatory claim seeking to revoke the original $1,500.00 transfer made by the Stouts is affirmed; that portion of the judgment which granted the exception of prescription and dismissed Premier Bank's revocatory action is reversed. The case is remanded for further proceedings consistent with this decision. All costs of this appeal are assessed against First Federal Savings & Loan Association of Lake Charles.
*192 AFFIRMED IN PART AND REMANDED.
DOMENGEAUX, C.J., concurs in the result and assigns reasons.
LABORDE, J., concurs in the result.
DOMENGEAUX, Chief Judge, concurs in the result.
I agree with the result reached in the main opinion, but disagree with the reluctance to rely definitively on the case of First Federal Savings & Loan Association of Lake Charles v. Jones, 620 So.2d 408 (La.App. 3d Cir.1993), an authoritative case decided a few months ago by a panel of this court. As explained in Jones, prescription under La.C.C. Art. 2041 cannot begin to run until there is both a wrongful act and resultant damages. In Jones, the date prescription began to run was the date of a deficient sheriff's sale, a year and a half after the transfer sought to be annulled by the plaintiff bank. During that year and a half, the bank had no cause of action because it had sustained no damages until its security turned out to be deficient.
Likewise, in this case, the $1,500 transfer by the defendants, which is sought to be annulled by Premier Bank and First Federal, occurred on September 7, 1988. That is the date of the alleged wrongful act. But First Federal sustained no damages until its security was found to be deficient which was some time prior to August 1, 1989 (the date First Federal obtained three deficiency judgments against the defendants.
As noted in Jones, the public records doctrine means that recordation will put a creditor on notice "of the possibility that it [has] been damaged." 620 So.2d at p. 411. Therefore, First Federal knew or should have known of the $1,500 transfer as the time of its recordation. Accordingly, the one year prescriptive period began to run when First Federal sustained damages at the time of the deficient sheriff's sale, i.e., prior to August 1, 1989. First Federal's suit filed more than two years later was untimely; therefore, I agree that the trial judge properly granted the defendants' exception dismissing the action to revoke the $1,500 transfer.
Concerning Premier Bank, however, it is clear, under Jones, that the defendants' exception of prescription was improperly granted, as the majority opinion discusses. I concur in this part to point out that the Jones case requires a finding that the trial judge's ruling on the exception of prescription was incorrect; the dismissal, however, of Premier Bank's claim may be properly based on an exception of no cause of action which we have noticed sua sponte. Whether Premier Bank has a cause of action is a question for the trial court to decide after an evidentiary hearing.
NOTES
[1] The author pretermit full consideration of the correctness of the Jones' decision. The other panel members would adopt the Jones' holding as discussed in the concurring opinion. While it is clear, under Jones, that the defendants' exception of prescription against Premier Bank was improperly granted, a reading of the briefs submitted to this Court suggests that Premier Bank may have failed to state a cause of action. La. C.C. Art. 2036 requires anteriority of the debt as a prerequisite to the revocatory action.