620 So.2d 408 (1993)
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF LAKE CHARLES, Plaintiff-Appellant,
v.
Horace Lynn JONES, et al., Defendants-Appellees.
No. 92-1166.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
Rehearing Denied July 13, 1993.
*409 Robert Joseph Tete, Lake Charles, for plaintiff-appellant First Federal Sav. & Loan Assn.
Helton Gayle Marshall, Lake Charles, for defendants-appellees Horance Lyn Jones et al.
Before GUIDRY and WOODARD, JJ., and CULPEPPER, J. Pro Tem.
GUIDRY, Judge.
In this revocatory action, plaintiff, First Federal Savings & Loan Association of Lake Charles (First Federal), appeals a judgment of the trial court sustaining an exception of prescription filed by defendants, Horace Lynn Jones, Gloria Mae Jones and Sandra Lynn Jones Treme and Tommy C. Rutledge as Trustees of the Horace Lynn Jones Family Trust (the Trust), and dismissing First Federal's suit at its costs. We reverse.
The parties to this suit entered into the following stipulations of fact for the sole purpose of the court's consideration of the exception of prescription:
1. On or about March 27, 1986, Mac's Superette, Inc. executed a promissory note in favor of First Federal Savings and Loan Association, Inc. (or bearer) in the sum of $100,000.00. This note was secured by a mortgage affecting certain equipment and certain real estate (being a grocery store location). The note was endorsed by Horace Lynn Jones.
2. In 1987, the owners of the stock of Ristom's Supermarket of the Southwest, Inc. (formerly known as Mac's Superette, Inc.) entered into an agreement to purchase and sell stock to Cecil Doyle, ...
3. The corporation defaulted on the loan to First Federal Savings and Loan Association some time around September of 1988.
4. On January 24, 1989, Horace Lynn Jones and his spouse formed the Horace Lynn Jones Family Trust, by notarial act. Into the Trust, Horace Lynn Jones and his spouse, Gloria Mae Jones transferred a number of the movable and immovable assets that they owned. Independent Trustees were named, namely Sandra Lynn Treme and Tommy C. Rutledge. The donation in trust was duly recorded in the public records of Calcasieu Parish on July 27, 1989 under Calcasieu Parish file number 2011949....
5. The recordation of the Trust was noted in the Daily Recorder published in the parish. The information relating only to mortgages in the Daily Recorder is customarily reviewed at the main offices of First Federal Savings and Loan Association.
6. On July 11, 1989, First Federal Savings and Loan Association filed suit on the promissory note and mortgage described in paragraph 1 against Ristom's Supermarket of the Southwest, Inc. (formerly Mac's Superette, Inc.) and Horace Lynn Jones. That suit resulted in the rendition of a summary judgment dated March 16, 1990 against Ristom's Supermarket of the Southwest, Inc. and Horace Lynn Jones, ...
7. Following the rendition of the judgment, First Federal Savings and Loan *410 Association of Lake Charles had the real estate and chattels seized and sold at sheriff's sale. The sale took place on October 3, 1990 and the sale price was $111,200.00 resulting in a credit on the judgment of $105,665.64.
8. On June 24, 1991, First Federal Savings and Loan Association of Lake Charles filed this lawsuit (a revocatory action) seeking to annul and set aside the transfer from Horace Lynn Jones to the Horace Lynn Jones Family Trust.
9. First Federal Savings and Loan Association of Lake Charles had actual knowledge of the Trust and its recordation in the Conveyance Records of Calcasieu Parish more than one year prior to the date on which First Federal Savings and Loan Association of Lake Charles filed this lawsuit (Suit #91-3659), but First Federal Savings and Loan Association of Lake Charles did not discover the harm created by the transfer and recordation until after October 3, 1990, less than one year prior to the date on which First Federal Savings and Loan Association of Lake Charles filed this lawsuit (Suit # 91-3659).
Defendants' exception of prescription is based upon La.C.C. art. 2041, which states:
The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
In his reasons for sustaining defendants' exception, the trial judge noted that the article as written does not appear to be consistent with the comments to the article which explain that "... the prescriptive period should be one year from the day the obligee learned of the harm". The trial court then concluded:
This Court believes that the pertinent phrase in the instant case is that pertaining to an act, the deed and its recordation on the public record; not a result, because a result is significant only when there has been a failure to act. The execution and recordation of the Horace Lynn Jones Family Trust was an act. No failure to act is relevant here. The stipulation of facts declares that plaintiff had actual knowledge of the trust more than a year before the filing of the revocatory act [sic]. Therefore, the exception of prescription is sustained, and the plaintiff's suit is dismissed at its costs.
The trial court recognized the apparent inconsistency between the wording of Article 2041 and the express purpose of the article in its comments. However, after recognizing this fact, he erred in not applying the principles of interpretation of laws as set out in Chapter 2 of the Preliminary Title of the Civil Code, i.e., La.C.C. arts. 9 thru 13, and in particular Articles 10 and 13, which state:
Article 10.
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
Article 13.
Laws on the same subject matter must be interpreted in reference to each other.
La.C.C. art. 2041 is found in Chapter 12, Book III of the Louisiana Civil Code, entitled Revocatory Action and Oblique Action. Section 1 of that chapter deals with the revocatory action and begins with Article 2036, which states in pertinent part: "An obligee has a right to annul an act of the obligor ... that causes or increases the obligor's insolvency". The comments to that article explain that the article "substitutes an act of the obligor that causes or increases his insolvency for the notion of an act [of] fraud" contained in the source articles. The comments also inform us that the source of the revocatory action can be traced back to the Roman Paulian action.
An in depth discussion of the Paulian or revocatory action can be found in Planiol, Traite' Elementaire De Droit Civil, Vol. 2, Part 1 at 168-185, wherein, in pertinent part, Planiol explains:
300. Formulation of the Rule
The only acts which can give rise to a revocation upon the demand of creditors, given the proper case, are those by which the debtor has impoverished himself; ...

. . . . .

*411 310. In What Does Damage Consist
The damage is the determining cause of the action. It consists in the fact that the act of the debtor brings about his insolvency, or augments a pre-existing insolvency. As a consequence, in order for the revocatory action to be possible it is necessary that the act be with reference to property subject to seizure by the creditors, and that it form part of their common pledge....
311. Proof of Damage
Such proof is a condition to the exercise of the revocatory action. It is easy to furnish if the creditors have already "discussed," that is, seized and sold the property of the debtor; if the price is not sufficient to satisfy all, the damage is not only demonstrated, but has also materialized....
(footnote omitted)
While the modern Civil Code articles have deleted the word "fraud" from their texts, they still embody the principles enunciated by and rooted in the Paulian action.
The Trust was an alienation as contemplated by La.C.C. art. 2036. While we pretermit any question of fraud, it is undeniable that the result of the "act" was to increase Horace Lynn Jones' insolvency. What was not clear at the time of the act was whether that impoverishment damaged the creditor (First Federal). Thus, before First Federal could exercise its right to the revocatory action, it first had to be able to prove that it had been damaged by its debtor's actions. The trial judge's reliance on the recordation date of the trust instrument in the public records as the date prescription began to run was clearly misplaced. While recordation of the trust instrument clearly put future lenders on notice as to which assets of Horace Lynn Jones, if any, were available to secure his personal indebtedness, the recordation did no more than put First Federal on notice of the possibility that it had been damaged.
In Rayne State Bank & Trust v. National Union Fire Insurance Company, 483 So.2d 987 (La.1986), the Supreme Court explained:
In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions runs "from [the day] on which the injurious words, disturbance, or damage were sustained."
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910). Thus, until damage was "sustained" by the bank, it had no cause of action, and prescription did not commence to run ...
In the case at bar the parties stipulated that First Federal did not know of the harm (damage) caused by the establishment and recordation of the trust until after October 3, 1990, the date of the sheriff's sale. Clearly, this was the date prescription began to run. The present revocatory action was filed June 24, 1991, well within one year of the date First Federal learned it had been damaged by the transfer of assets from Horace Lynn Jones to the Horace Lynn Jones Family Trust and well within the three year peremptive period. This action was timely filed.
Accordingly, for the reasons stated, the judgment of the trial court is reversed, defendants' exception of prescription is overruled and the case is remanded to the trial court for further proceedings in accordance with this opinion. Costs of this appeal are assessed against defendants-appellees.
REVERSED AND REMANDED.