liSAUNDERS, Judge.
Defendants appeal a judgment setting aside a debtor corporation’s purported transfer of revenue producing property to its officers and sole shareholder and rejecting defendants’ prescription exception to plaintiffs revocatory action. We affirm.

FACTS

This dispute represents the last in a series of plaintiff Jeme, Inc.’s efforts to recover $10,000.00 for carpet sold by defendants from December 1989 to March 1990. A Georgia corporation, Jeme, Inc. delivered some $25,-000.00 worth of carpet on a consignment basis in July 1989 to Gold Coast Carpets, Inc., whose stock was 100% owned by code-fendant, James Michael Pratt. After Gold Coast made a few payments to plaintiff total-ling approximately $3,400.00, defendants re-tumed ^approximately $10,000.00 of the remaining carpet inventory in October 1989. The remaining carpet was sold by Gold Coast Carpets but never accounted for to Jeme, Inc.
Plaintiff filed suit in Lake Charles City Court and there obtained a judgment against defendant, Gold Coast Carpets, for $10,-000.00, plus interest, attorney’s fees of $3,000.00, and court costs. The city court judgment further dismissed plaintiffs demands against James Michael Pratt in his personal capacity, accepting James Michael Pratt’s position that he had committed no fraud to justify inculpating him personally for the corporation’s obligation.
The City Court had no way of knowing that only the day before trial, on May 30, 1990, Mr. Pratt had used his authority as officer and sole shareholder of the corporation to transfer its sole revenue producing asset to himself and his wife. After learning of the conveyance and the resulting damages, plaintiff filed this revocatory action to set aside the purported conveyance of the property.
Plaintiff first learned of the conveyance in the late summer or fall of 1991. In August of that year, Jeme attempted to garnish rental payments it believed were being paid to Gold Coast Carpets, Inc., only to learn from the tenant’s responses to its garnishment interrogatories that the rent was not being paid to the corporation. When plaintiff supplemented its garnishment interrogatories to the tenant to learn to whom its payments were being remitted, the tenant on September 11, 1991, objected to its need to respond because it was not indebted to Gold Coast Carpets. In neither its response nor its objection did the tenant volunteer this information.
Plaintiff then filed, on September 12, 1991, a Petition to Examine Judgment Debtor. It was about this time that it first learned of *900 the property’s conveyance to Pratt and his wife, who received $37,000.00 from the property from May 1990-May 1991.
|3On December 23, 1991, Jeme, Inc. filed this revocatory action, alleging defendants’ fraud works to deny it of its right to execute on the property. Plaintiff alleges that the Pratts knew of Gold Coast’s insolvency and participated in the sham transaction merely to obtain an illegal preference over plaintiff. The petition further alleges that permitting the sale to stand would result in damages since Gold Coast has no other assets.
At trial, Mr. Pratt conceded that:
0 he was the sole shareholder of Gold Coast;
0 he purchased the carpeting on consignment in July 1989;
S although he sold most of the carpet, he only remitted a portion of the sums owed; he and his wife drew salaries of $8,725.00 in December 1989 and $13,400.00 in January 1990;
0 he had been personally obligated on the building's $ 130,000.00 mortgage before Gold Coast conveyed it to him; and
0 he had paid no cash in the transaction.
The parties presented expert testimony as to the building’s value. This testimony was relevant because plaintiff was required to show that the value of the braiding exceeded a $130,000.00 senior mortgage in favor of a third party in order to show that it had been aggrieved by the braiding’s transfer. Plaintiffs expert concluded that the value of the property exceeded $130,000.00 if one were to take the property’s rental income into account. Defendants’ expert, on the other hand, offered his opinion that the braiding was worth less than the $130,000.00 first mortgage. His appraisal did not take into account the building’s rental income of $37,-000.00 for the May 1990-May 1991 term.
UThis appeal follows judgment in favor of Jeme, Inc. defeating defendants’ prescription exception and annulling and setting aside the purported transfer of the property.

LAW AND ARGUMENTS

Gold Coast Carpets, Inc., James Michael Pratt, and Vickie Pratt argue that the trial court erred in rejecting their contention that plaintiffs revocatory action had prescribed. Their position is that plaintiffs failure to file its revocatory action within one year of the conveyance’s recordation bars Jeme, Inc. from now advancing its claim.
Alternatively, on the merits, they maintain that the conveyance was valid and did not increase the corporation’s insolvency and, in any event, did not aggrieve plaintiff in light of the first mortgage placed on the property.

Prescription

Initially, defendants Gold Coast and the Pratts maintain that the trial judge erred in failing to find that plaintiffs revocatory action had prescribed. They point out that the assumption deed by which the purported transfer took place was recorded in the pub- *901 lie records of Calcasieu Parish on May 30, 1990.[1] Because suit was not filed until December 23, 1991, more than one year after plaintiffs constructive knowledge of the transfer, defendants maintain that the trial court erred in reaching the merits of plaintiffs revocatory action.
Citing First Federal Savings & Loan Association of Lake Charles v. Jones, 620 So.2d 408 (La.App.3d Cir.), writ denied, 629 So.2d 347 (La.1993), plaintiff on the other hand maintains that under the circumstances, prescription under LSA-C.C. art. 2041 only began to run from when it discovered the harm created by the transfer, Isnot from the date it constructively learned of the transfer.[2] Plaintiff points out that its revocatory action was filed within four months of its actual knowledge of the conveyance. In First Federal Savings & Loan, supra, the endorser of a promissory note on which he would subsequently be named a defendant party established a family trust into which he transferred a number of assets. We overruled the prescriptive exception although the creditor’s revocatory action was filed more than one year after the creditor had actual knowledge of the trust and its recordation. We did so because, citing Rayne State Bank and Trust v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986), the creditor did not know of the harm caused by the establishment and recordation of the trust until after October 3, 1990, the date of a sheriffs sale establishing that a balance was owed on the principal obligation.
We believe the rationale of First Federal Savings & Loan is applicable here. Plaintiff obtained a valid and enforceable judgment against the party it had every reason to believe owned the property.[3] The property in question was burdened by a 16 $130,000.00 first mortgage. Therefore, unless the property’s value exceeded that sum, plaintiff could claim no injury. By this reasoning, only once its rental income had been established could plaintiff know that it had been aggrieved. Following First Federal Savings & Loan, at 411, even assuming arguendo it had constructive notice, plaintiff had no reason to believe it had suffered any harm by the property’s last-minute conveyance, until it learned of the rent being earned by the property.

THE MERITS

The remaining issues call into question the applicability of LSA-C.C. arts. 2036 and 2039:
Art. 2036. Act of the obligor that causes or increases his insolvency
An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor’s insolvency.
Art. 2039. Gratuitous contract made by the obligor
An obligee may attack a gratuitous contract made by the obligor whether or not the other party knew that the contract *902 would cause or increase the obligor’s insolvency.
Defendants maintain that conveyance of the property did not increase the obligor’s insolvency because no money changed hands and because the value of the premises was equal to or less than the balance of the mortgage.
We are left unpersuaded. By Mr. Pratt’s own testimony, he was already obligated personally as cosigner of the first $130,000.00 mortgage on the property at the time he acquired it from the debtor corporation. Nothing additional was pledged or paid in the transfer. Therefore, by its nature, Gold Coast’s transfer of the property was a gratuitous transfer whose sole purpose and effect was to enrich defendant Pratt to the detriment of plaintiff.

\ .CONCLUSION

In short, we find no basis for upsetting the findings or conclusion of the trial court, both of which are affirmed, at defendants’ cost. We do not find clearly wrong the trial court’s conclusion that the property was worth well in excess of the amount of the mortgage, nor that the purported transfer constituted an “act” employed by an obligor (in hindsight, possibly more than one) which worked to defeat an obligee’s rightful claim by substituting another in its place.

DECREE

For the foregoing reasons, we find no merit in the errors assigned by Gold Coast Carpets, Inc., James Michael Pratt and Vickie Pratt. The findings and judgment of the trial court are affirmed at the cost of Gold Coast Carpets, Inc., James Michael Pratt and Vickie Pratt, in solido.
AFFIRMED.

. The eve of the city court trial.

. Indeed, claims plaintiff, had the Legislature intended the tolling of the prescriptive period from date of transfer, it could have so provided.

. Put in a light most favorable to defendants, the question is whether the Public Records Doctrine under the circumstances calls for such a hyper-technical application that plaintiff is not to be forgiven for its failure to examine the conveyance records during the very brief period between defendants' surreptitious transaction and rendition of the city court, judgment in its favor. Under the circumstances, we will not so reward the questionable conduct of defendants.
Art. 1759. Good faith
Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.
Art. 1954. Confidence between the parties
Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.
This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations.
Our review of the matter leaves absolutely no question that defendants, who appeared in Lake Charles City Court with hat in hand, deliberately-misled not only plaintiff but the court when it suggested that Pratt was on the ropes and on the verge of bankruptcy, when in fact only the day before he had acquired from the corporation, at absolutely no cost, the property in question.