JjDENNIS R. BAGNERIS, SR., Judge.
In this revocatory action, Allied Ship-yard, Inc. (“Allied”) appeals a trial court’s judgment sustaining the exception of prescription filed by Stephen D. Edgett, Marilyn S. Edgett, and Lauren L. Edgett, (“Edgetts”), that resulted in the dismissal of the lawsuit. We affirm.

STATEMENT OF THE CASE

In May 1999, Stephen D. Edgett signed a personal guaranty with regard to a contract between Allied Shipyard, and Ed-gett’s employer, Marsh Venture, L.L.C. On January 10, 2000 Allied Shipyard filed a lawsuit against Stephen D. Edgett and other parties,[1] to enforce the contract. Allied Shipyard obtained a money judgment[2] on September 17, 2002.
On April 10, 2001, Stephen D. Edgett and his wife, Marilyn S. Edgett, made a gratuitous donation of their home to their daughter, Lauren L. Edgett. The donation was recorded in the public record on April 16, 2001. In December 2002, Allied Shipyard learned of the donation. On December 18, 2002, Allied Shipyard 1 ¡filed a revocatory action to set aside the donation. Allied alleged that this donation either caused or increased the insolvency the Ed-getts. In response to the revocatory action the Edgetts filed an exception of prescription.
On March 14, 2003, the trial court conducted a hearing on the exception of prescription filed by the Edgetts. The trial court ruled in favor of the Edgetts and dismissed Allied Shipyard’s revocatory action.

LAW AND ANALYSIS

LSA-C.C. article 2041 as amended in 1984 states:
*191 The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
Although the article clearly expresses that a revocatory action “must be brought within one year from the time [the creditor] learned or should have learned of the act,” La.C.C. art. 2041 the article’s revision comments suggest “the prescriptive period should be one year from the day the ... [creditor] learned of the harm.” Revision Comment (a), La.C.C. art. 2041
Noting this inconsistency and the article’s purpose, as expressed in the revision comments, the court in First Federal Savings & Loan Ass’n of Lake Charles v. Jones, 620 So.2d 408 (La.App. 3 Cir.1993), said:
“La.C.C. art. 2041 is found in Chapter 12, Book III of the Louisiana Civil Code, entitled Revocatory Action and Oblique Action. Section 12 of that chapter deals with the revocatory action and begins with Article 2036, which states in pertinent part: ‘An obligee has a right to annul an act of the obligor ... that causes |3or increases the obligor’s insolvency’. The comments to that article explain that the article ‘substitutes an act of the obligor that causes or increases his insolvency for the notion of an act [of] fraud’ contained in the source articles. The comments also inform us that the source of the revocatory action can be traced back to the Roman Paulian action.
An in depth discussion of the Paulian or revocatory action can be found in Planiol, Traite’ Elementaire De Droit Civil, Vol. 2, Part 1 at 168-185, wherein, in pertinent part, Planiol explains:
300. Formulation of the Rule
The only acts which can give rise to a revocation upon the demand of creditors, given the proper case, are those by which the debtor has impoverished himself; ...
310. In What Does Damage Consist The damage is the determining cause of the action. It consists in the fact that the act of the debtor brings about his insolvency, or augments a pre-existing insolvency. As a consequence, in order for the revocatory action to be possible it is necessary that the act be with reference to property subject to seizure by the creditors, and that it form part of their common pledge....
311. Proof of Damage
Such proof is a condition to the exercise of the revocatory action. It is easy to furnish if the creditors have already ‘discussed,’ that is, seized and sold the property of the debtor; if the price is not sufficient to satisfy all, the damage is not only demonstrated, but has also materialized .... (Footnote omitted)
While the modern Civil Code articles have deleted the word ‘fraud’ from their texts, they still embody the principles enunciated by and rooted in the Paulian action.
|/Thus, tracing the Louisiana revocatory action’s origin to the Roman Paulian action, the majority in Jones held “proof of damage (harm)” is essential in presenting a revocatory claim. Citing Rayne State Bank & Trust Co. v. Nat’l Union Fire Ins. Co., 483 So.2d 987 (La.1986), the majority also noted the Supreme Court said:
“In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions run ‘from [the day] on which the injuri *192 ous words, disturbance, or damage were sustained.’
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action — both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910). Thus, until damage was ‘sustained’ by the bank, it had no cause of action, and prescription did not commence to run ...”
Therefore, the majority reasoned the Louisiana revocatory action’s prescriptive period does not begin to run until the “damage is sustained” which necessarily occurs after the date of the wrongful act.
In the instant case, the trial court cited Lewis v. Hood, 1997-2118 (La.App. 1 Cir.1998), 721 So.2d 1078 in support of its judgment. The trial court concluded that the language of article 2041 is clear and unambiguous in its requirements. The trial court stated that in order to assei't a revocatory cause of action there must be a debt or right of the obligee and a subsequent act by obligor that causes or increases his insolvency. The trial court opined that the cause of action arises when the | sobligor-debtor performs an act, which causes insolvency or increases. Further, that obtaining a judgment simply does not matter in establishing the cause of action. Also, that there is no need to look to the revision comments because the language of La. Civil Code Art. 2041 is clear.
The trial court concluded that La. Civil Code Article 2041 has a one-year prescriptive period which was triggered when Allied, the obligee-creditor knew or should have known of the donation which they alleged created or increased the insolvency of the debtor-obligor, Stephen D. Edgett.
After careful review of the record, we find that more than a year had elapsed before Allied Shipyard filed its revocatory action on December 18, 2002. Therefore, the trial court properly granted the exception of prescription dismissing Allied Shipyard’s Action to revoke the donation that the Edgetts made to their daughter, Lauren L. Edgett.

CONCLUSION

Accordingly, we affirm the trial court’s judgment granting the exception of prescription and its dismissal of Allied Shipyard’s revocatory action against the Ed-getts.
MURRAY, J., concurs with reasons.

. And other parties, not including Marilyn S. Edgett and Lauren L. Edgett.

. This money judgment is presently on appeal in the First Circuit Court of Appeal.