939 So.2d 1227 (2006)
LONDON TOWNE CONDOMINIUM HOMEOWNER'S ASSOCIATION
v.
LONDON TOWNE COMPANY, et al.
No. 2006-CC-401.
Supreme Court of Louisiana.
October 17, 2006.
*1229 The Steeg Law Firm, Charles L. Stern, Jr., Alan M. Cohen, New Orleans, for applicant.
Fred L. Herman, Thomas J. Barbera, Daniel W. Nodurft, New Orleans, for respondent.
VICTORY, J.
We granted this writ application to resolve a split among the circuits as to the correct interpretation of Louisiana Civil Code Article 2041, which provides the prescriptive and peremptive periods for bringing a revocatory action. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and hold that, where the obligee seeks to annul an act of the obligor, the relevant date for prescriptive purposes is the date the obligee knew or should have known of the act, and that the date of recordation of the act does not, standing alone, commence the running of prescription.

FACTS AND PROCEDURAL HISTORY
On August 28, 2001, the London Towne Homeowner's Association (the "Association") filed suit against the London Towne Condominiums (the "LTC") in the 24th Judicial District Court to collect amounts due for association dues and for defects in the condominiums (the "Lawsuit"). On May 24, 2004, the 24th Judicial District Court signed a judgment in favor of the Association and against LTC in the principal amount of $281,899.16, plus legal interest, expert witness fees and attorney's fees. LTC did not appeal the judgment, which has not been satisfied.
On August 19, 2000, LTC acquired Unit 9 of 1201 Chartres Street in New Orleans for $202,000.00. On February 1, 2002, after the Lawsuit was filed, but prior to the entry of judgment against LTC, LTC executed an Act of Sale by which it *1230 purportedly sold the property to Millennium Group I, LLC ("Millennium") for $202,000.00. The February 1, 2002, Act of Sale was recorded in the Orleans Parish conveyance records on February 19, 2002.
The Association alleges that shortly after obtaining its judgment against LTC, the Association learned of the 2002 transfer of the Chartres Street property. Believing that the transfer was part of a scheme to place LTC's assets out of the reach of its creditors, the Association filed a Petition for Declaratory Judgment in Orleans Parish on November 18, 2004, challenging the transfer under both the revocatory action and simulation articles of the Civil Code,[1] and seeking to have the transfer adjudged either an absolute or relative nullity. On June 2, 2005, Millennium filed peremptory exceptions of no cause of action and no right of action in response to the action in simulation and a peremptory exception of prescription in response to the revocatory action. Millennium argued that the Association's revocatory action was prescribed on its face under La. C.C. art.2041 because it was filed more than one year after the date the document evidencing the transfer was recorded.
By judgment dated July 13, 2005, the trial court denied Millennium's exceptions. LTC sought supervisory review of the denial of its exception of prescription. The court of appeal granted LTC's writ and reversed the judgment of the trial court, holding that "Millennium met its burden of proof to show that the Association's revocatory action had prescribed, since over a year has passed from the date on which the Association received constructive notice of the sale," which the court of appeal ruled was the date the Act of Sale was recorded. London Towne Condominium Homeowner's Association v. London Towne Company, et al., 05-1243 (La.App. 4 Cir. 1/18/06). We granted this writ application to resolve a split in the circuits as to commencement of prescription of a revocatory action under La. C.C. art.2041. London Towne Condominium Homeowner's Association v. London Towne Company, et al., 06-0401 (La.5/5/06), 927 So.2d 298.

DISCUSSION
Louisiana Civil Code articles 2036-2043 provide the rules applicable to the revocatory action, pursuant to which "[a]n obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency[2]." La. C.C. art.2036. These code articles dictate the type of relief to which an obligee is entitled and the procedures which must be followed in a revocatory action.[3] Civil Code article 2041 provides as follows:

*1231 The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act,[4] of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261, 1267. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate courts finds that it is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id. The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
In reversing the judgment of the trial court, the court of appeal relied on its prior holding in Allied Shipyard, Inc. v. Edgett, 03-1315 (La.App. 4 Cir. 2/11/04), 868 So.2d 189, writ granted, 04-0503 (La.4/23/04), 870 So.2d 281 (case settled after writ grant). Allied Shipyard held that prescription under La. C.C. art.2041 begins to run when the obligee-creditor knew or should have known of the donation which they alleged created or increased the insolvency of the debtor, which is when the donation sought to be set aside was recorded in the public record. 868 So.2d at 192. Based on Allied Shipyard, the court of appeal held:

*1232 La. C.C. art.2041 clearly provides for constructive notice to trigger the running of prescription based on its express provision that a revocatory action shall be brought within one year from the time the creditor learned or should have learned of the act. Although the Association argues and the trial court reasoned that prescription should not commence until the Association learned that it had been damaged by the transfer, we find nothing in the record supporting an alternative date from which the Association claims that prescription should have run. Millennium met its burden of proof to show that the Association's revocatory action had prescribed, since over a year has passed from the date on which the Association received constructive notice of the sale.
London Towne Condominium Homeowner's Ass'n, 95-1243, p. 3.
The court in Allied Shipyard made clear its disagreement with the view of the Third Circuit, which has held that prescription does not begin to run until the creditor has constructive knowledge of the damage caused by the act which increases the insolvency of the debtor, rather than the date of the act itself. First Federal Savings & Loan Ass'n of Lake Charles v. Jones, 620 So.2d 408 (La.App. 3 Cir.), writ denied, 629 So.2d 347 (La.1993); Jeme, Inc. v. Gold Coast Carpets, Inc., 94-182 (La.App. 3 Cir. 10/5/94), 643 So.2d 898. The Third Circuit reasoned in First Federal that "before First Federal could exercise its right to the revocatory action, it first had to be able to prove that it had been damaged by its debtor's actions." 620 So.2d at 411. Thus, "[t]he trial court's reliance on the recordation date of the trust instrument in the public records as the date prescription began to run was clearly misplaced." Id.
The First Circuit has reached yet another conclusion as to the interpretation of La. C.C. art.2041. In Parish Nat. Bank v. Wilks, 04-1439 (La.App. 1 Cir. 8/3/05), 923 So.2d 8, 15, a case with essentially the same facts for prescription purposes as the case sub judice, the court "decline[d] to find that the time of the filing of the act of donation in the conveyance records was the date when [the creditor] knew or should have known of the act of donation, so as to commence the prescriptive period on its revocatory action." In so holding, the First Circuit correctly relied on our holding in Phillips v. Parker, 483 So.2d 972 (La.1986), which explained the public records doctrine as follows:
The fundamental principle of the law of registry is that any sale, mortgage, privilege, contract or judgment affecting immovable property, which is required to be recorded, is utterly null and void as to third persons unless recorded. When the law of recordation applies, an interest in immovable property is effective against third persons only if it is recorded; if the interest is not recorded, it is not effective against third persons, even if the third person knows of the claim. . . .
Thus, the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. The essence of the public records doctrine is that recordation is an essential element for the effectiveness of a right, and it is important to distinguish between effectiveness of a right against third persons and knowledge of a right by third persons. An unrecorded interest is not effective against anyone (except the parties). A recorded interest, however, is effective both against those third persons who have knowledge and those who do not have knowledge of the presence of the interest in the public records. From the standpoint of the operation of the public records doctrine, knowledge is an irrelevant *1233 consideration. Any theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine. (Emphasis added.)
Phillips, 483 So.2d at 975-76 (footnotes and citations omitted). Thus, based on our holding in Phillips, the court of appeal in Parish Nat. Bank held:
Since the public records doctrine allows the parties to rely on the absence of documents in the public records and does not impute knowledge of the contents of the public records to third persons, the public records doctrine cannot be used to charge an obligee (creditor) with constructive knowledge of documents in the public records for purposes of determining whether he knew or should have known of the act so as to commence the prescriptive period under La. C.C. art.2041.
Parish Nat. Bank, supra at p. 15. In that case, because the defendant's motion for summary judgment was supported only by the recordation of the donation in the public records on March 4, 2002, and the plaintiff admitted in its petition that it learned of the donation on January 16, 2003, the court held that prescription began to run on January 16, 2003. Id.
We have consistently held that the starting point in interpreting any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885, 888 (La. 1993); Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. In reading the clear language of La. C.C. art.2041, it is evident that there are two possible prescriptive dates and one peremptive date for bringing a revocatory action. An action must be brought: (1) within one year from the time the obligee learned or should have learned of the act of the obligor that the obligee seeks to annul; (2) within one year from the time the obligee learned or should have learned of the result of the failure to act of the obligor that the obligee seeks to annul; or (3) never after three years from the date of the act or the result of the failure to act.
In this case, what we have is an act, i.e., the sale of Unit 9 of 1201 Chartes Street in New Orleans, that the obligee seeks to annul. La. C.C. art.2041 clearly states that under these circumstances, the relevant date is one year from the time the obligee learned or should have learned of the act. The result of the act, or the harm caused as a result of the act, is not a relevant consideration because a result is only significant when there has been a failure to act.[5]
Therefore, where an obligee is seeking to annul an act of an obligor, the relevant date is when the obligee learned or should have learned of the act. Granted, an obligee only has the right to bring an action to annul an act "that causes or *1234 increases the obligor's insolvency." La. C.C. art.2036. However, according to the clear language of La. C.C. art.2041, prescription begins to run from the date the obligee learned or should have learned of the act, not the date the obligee knows the act has caused or increased the obligor's insolvency. While this may, in theory, result in a cause of action prescribing before the obligee has the right to bring the action, we do not believe this was contrary to the intent of the legislature, as they have cut off the right to file a revocatory action by setting a peremptive period, regardless of the obligee's knowledge or lack thereof, three years from the date of the act or the result. As we held in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, 1296, in interpreting the legal malpractice prescriptive and peremptive period under La. R.S. 9:5605, "while the terms of the . . . statute of limitations statute may be unfair in that a person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative." Just as in Reeder, the legislature has clearly stated the terms of this prescriptive/peremptive statute of limitations and we are bound to interpret it as written.
Thus, the remaining issue is whether the date of recordation in the public records ipso facto constitutes constructive notice to the obligee of the act itself. Based on our explanation of the public records doctrine in Philips v. Parker, supra, we reject that legal conclusion. As we stated in Philips, "[a]ny theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine." 483 So.2d at 975-76. Therefore, recordation in the public records does not constitute constructive notice to third parties under La. C.C. art.2041.
In light of the above, we need to determine if the trial court was manifestly erroneous in denying Millennium's exception of prescription. A party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. Cichirillo v. Avondale Indus., Inc., 04-2894 (La.11/29/05), 917 So.2d 424, 428. Although evidence may be introduced to support or controvert any objection pleaded, in the absence of evidence, an objection of prescription must be decided upon facts alleged in the petition with all allegations accepted as true. Id. If prescription is evident on the fact of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 508. As our holding indicates, the date of recordation does not, standing alone, prove actual or constructive knowledge of the act. Constructive knowledge sufficient to trigger the running of prescription exists when a party has sufficient information or notice to excite inquiry regarding a possible claim. Id. at 510-11. Such information or knowledge as ought to reasonably put the victim on notice is sufficient to start the running of prescription. Id. The date upon which an obligee learned or should have learned of the act is a factual determination to be made by the trial court considering all the facts and circumstances of the case.[6]
*1235 In its petition, the Association alleged in its Second Supplemental and Amended Petition for Declaratory Judgment that "[t]he Act of Sale was recorded on February 19, 2002 under Instrument No. 231488, and a copy of said act is attached hereto as Exhibit B." Millennium did not introduce any evidence in the trial court to prove actual or constructive knowledge of the transfer. Instead, it relied on the Association's statement in its petition that the transfer was recorded on February 19, 2002 as proof that the revocatory action has prescribed. However, as we have held today that the date of recordation does not provide constructive notice of the transfer, that statement in the petition does not prove that the Association learned or should have learned of the transfer on that date. Therefore, the burden of proof did not shift to the Association, but instead remained with Millenium; thus it was incumbent upon Millennium to introduce such evidence at the trial of its exception. Millennium failed to do so; therefore, it failed to satisfy its burden of proof.

CONCLUSION
Under the clear wording of La. C.C. art.2041, prescription on a revocatory action begins to run from (1) the time the obligee learned or should have learned of the act of the obligor that the obligee seeks to annul, or (2) the time the obligee learned or should have learned of the result of the failure to act of the obligor that the obligee seeks to annul. However, in all cases, a revocatory action is perempted three years from the date of the act or the result of the failure to act. The date the obligee learned or should have learned of the act or the result of the failure to act is determined by considering all the relevant facts and circumstances of the particular case. Where the obligee is seeking to annul an act of the obligor, the act of recordation in the public records, does not, standing alone, provide constructive knowledge of the act. In this case, Millennium bore the burden of proving that one year had passed since the Association learned or should have learned of the transfer of the Chartres Street property. Because the only evidence it presented in support of its exception was the date of recordation of the transfer, it did not carry its burden of proof.

DECREE
For the reasons stated above, the judgment of the court of appeal is reversed and the trial court judgment is reinstated.
REVERSED.
NOTES
[1] In support of its claims, the Association alleged that the transfer by LTC to Millennium was made for less then the amount stated in the Act of Sale or for no consideration at all, that the parties to the transfer intended for different effects to flow from the transaction than those stated in the Act of Sale or for the transaction to produce no effects between them, and that the transfer caused or increased LTC's insolvency. The Association also alleged that the purported transfer was made to place the Chartes Street property beyond the reach of LTC's creditors.
[2] "An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets." La. C.C. art.2037.
[3] La. C.C. art.2038 provides:

An obligee may annul an onerous contract made by the obligor with a person who knew or should have known that the contract would cause or increase the obligor's insolvency. In that case, the person is entitled to recover what he gave in return only to the extent that it has inured to the benefit of the obligor's creditors.
An obligee may annul an onerous contract made by the obligor with a person who did not know that the contract would cause or increase the obligor's insolvency, but in that case that person is entitled to recover as much as he gave to the obligor. That lack of knowledge is presumed when that person has given at least four-fifths of the value of the thing obtained in return from the obligor.
La. C.C. art.2039 provides:
An obligee may attack a gratuitous contract made by the obligor whether or not the other party knew that the contract would cause or increase the obligor's insolvency.
La. C.C. art.2040 provides:
An obligee may not annul a contract made by the obligor in the regular course of his business.
La. C.C. art.2042 provides:
In an action to annul either his obligor's act, or the result of his obligor's failure to act, the obligee must join the obligor and the third persons involved in that act or failure to act.
A third person joined in the action may plead discussion of the obligor's assets.
La. C.C. art.2043 provides:
If an obligee establishes his right to annul his obligor's act, or the result of his obligor's failure to act, that act or result shall be annulled only to the extent that it affects the obligee's right.
[4] "The expression, `. . . the result of a failure to act of the obligor' contemplates situations in which an obligor becomes insolvent, or his insolvency increases, because of his failure to act, or when the obligor fails to defend himself in a lawsuit, and the resulting judgment creates or increases his insolvency." La. C.C. art.2036, Official Revisions Comment (e) (1984).
[5] The Revision Comments to this article state:

(a) This Article is new. As "insolvency" is substituted from "fraud" as the criterion for availability of the revocatory action, the prescriptive period should be one year from the day the obligee learned of the harm. Otherwise, a devious obligor could prejudice his obligee's claim and conceal his actions for a year, thereby escaping liability altogether.
La. C.C. art.2041, 1984 Revision Comments (a). In light of the clear wording of the statute, which provides a different commencement date depending on whether the obligee is seeking to annul an act of the obligee or the result of a failure to act on the part of the obligee, we reject the Comment's blanket statement that "the prescriptive period should be one year from the day the obligee learned of the harm." Clearly, this is not true where the obligee is seeking to annul an act of the obligor. As clearly expressed by the legislature, prescription begins to run in that case when the obligee learned or should have learned of the act.
[6] The date of recordation may be a relevant consideration if, based on the facts and circumstances of the case, the obligee knew or should have known of the recordation. Further, if it is found that the obligee knew about the recordation, the date he found out about the recordation would commence the running of prescription. Thus, while the date of recordation is not the determinative factor in ascertaining the commencement of prescription, it may be a relevant factor depending upon the facts and circumstances of the case. One example of an act that would provide constructive notice where an transfer has been recorded would be a judgment debtor examination where the creditor learns of the debtor's property but fails to investigate whether it has been transferred to a third party.