ROLAND L. BELSOME, Judge.
 

 12Defendant-AppeIlant, Eugene Moli-nary, appeals the judgment casting damages against him where neither he nor his attorney was present at trial. Appellant further requests review of the judgment awarding damages against him despite the trial court’s finding that all claims against him had prescribed. We find that the record does not evidence that Appellant received adequate notice of trial. We further find that it is unnecessary to remand for a new trial, as Plaintiffs claims against Mr. Molinary are prescribed.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff-Appellee, Chef Menteur Land Company, Ltd. (“Chef Menteur”), owns a piece of immovable property in Orleans Parish near Chef Menteur Highway. Both landowners and lessees have utilized this property for fishing and outdoor activities. On May 8, 1996, Gary Sandrock signed a one-year lease with Chef Menteur for use of a parcel of land, upon which he built two camps, one at the far end of the property over the waterway. The lease was renewed by Gary Sandrock in 1997 and 1998. In 1999, Gary’s brother, Glenn Sandrock, became the lessee. From 1999 through 2002, Glenn Sandrock executed the lease.
 

 1 sPrior to the execution of the 2002 lease, asbestos containing materials
 
 [1]
 
 were
 
 *148
 
 dumped onto the leased property by Appellant Eugene Molinary, a violation of Louisiana Department of Environmental Quality (“LDEQ”) regulations. Notably, the 2002 lease contained an additional provision with regard to the lessee’s responsibility to remove the asbestos containing material from the property.
 
 [2]
 
 The asbestos-containing material was not removed, and on April 21, 2003, the LDEQ served a compliance order on Chef Menteur, ordering removal of the asbestos-containing materials. Chef Menteur complied with the order and brought suit on April 5, 2004, seeking compensation for the costs of removing the asbestos-containing material from Appellant, Gary Sandrock, and Glenn Sandrock.
 

 On June 23, 2004, Appellant filed exceptions of vagueness, ambiguity of the petition, prescription, and no cause of action. The exceptions came for hearing on December 17, 2004, and the trial court issued a judgment denying the exceptions on December 23, 2004. On February 16, 2005, Appellant filed an answer to Appellee’s petition for damages, and the Sandrocks filed a cross-claim against Appellant. Mol-inary answered the cross-claim on February 28, 2005. On August 29, 2005, Hurricane Katrina struck the Louisiana coast. On December 30, 2008, Appellee filed a supplemental and amending petition.
 

 14 The matter went to trial on September 8, 2009. The trial court found that both Glenn and Gary Sandrock knew or requested that Mr. Molinary dump the materials on the land, in violation of the lease agreement and without the permission of the lessor, Chef Menteur. The trial court issued written reasons for judgment on February 10, 2010, awarding Chef Ment-eur $121,341.48.
 

 In its Reasons for Judgment, the trial court found that Glenn Sandrock breached his obligation to clean up the asbestos containing materials, and thus breached the lease. Accordingly, the trial court applied the ten year prescriptive period for breach of contract, and found that Glenn Sandrock was liable to Chef Menteur for the damages incurred in removing the asbestos containing materials pursuant to La. Civ. Code art. 3499. The court further found that Eugene Molinary and Gary Sandrock could only be liable pursuant to a special statute or in tort because neither were lessees. With regard to tort claims, the trial court determined that any tort claims against Eugene Molinary or Gary Sandrock had plainly prescribed, as Chef Menteur had knowledge that asbestos containing material was dumped on their property as early as May 2002, according to the additional language contained in that lease agreement. The trial court thus found that
 
 contra own valentón
 
 was inapplicable, dismissing the argument that Chef Menteur was unaware that the lessee was allowing the dumping of asbestos-containing materials onto the property. Nevertheless, because Eugene Molinary did not bring or re-urge an exception of prescription, the court found that he was liable to Chef Menteur pursuant to La.Code Civ. Proc. art. 927,
 
 [3]
 
 which provides that a
 
 *149
 
 court may not supply an exception of prescription.
 

 |fiNext, the trial court addressed Chef Menteur’s assertions that other statutes provided alternative prescriptive periods. With regard to Louisiana’s Liability for Hazardous Substance Remedial Action Statutes, La. R.S. 30:2276
 
 et seq.,
 
 the court found that the categories of materials in this statutory scheme did not fall within the definition of “hazardous” as defined in those statutes, and that the three and ten-year prescriptive periods in the statute were inapplicable.
 
 [4]
 
 With regard to La. R.S. 9:5644, the court found that the five-year prescriptive period in the statute was likewise inapplicable, as the instant case did not involve asbestos abatement against a manufacturer; rather, it was an action to recover the cost of remediation due to illegal dumping.
 

 The court also determined that Chef Menteur failed to establish that the litigation qualified as a “cost recovery action” under 42 U.S.C. 9607 (the Comprehensive Environmental Response, Compensation, and Liability Act, or “CERCLA”) because the site was not a “facility” as contemplated in the statute; non-friable asbestos was not listed as a hazardous waste; and Defendants were not “responsible persons” as contemplated by the statute. The court further found that Chef Menteur failed to demonstrate that non-friable asbestos falls under the definition of hazardous waste as defined in 42 U.S.C. 9601(14). Therefore, the [(¡court determined that the six-year prescriptive period in 42 U.S.C. 9613(g)(2)(B) was also inapplicable.
 

 The court awarded damages to Chef Menteur and against Glenn Sandrock and Eugene Molinary based upon invoices and cancelled checks evidencing the actual asbestos remediation costs from Insulation Technologies and Quality Environmental. Various motions for new trial were filed and subsequently heard on November 19, 2010. On December 9, 2010, the trial court issued a judgment entitled “Final Judgment as to Motions for New Trial,” which increased the award in favor of Chef Menteur by $31,627.86 to $152,969.34, plus legal interest from the date of judicial demand, and apportioned fault, assessing Eugene Molinary at fifty percent fault for Chef Menteur’s damages.
 
 [5]
 

 Eugene Molinary filed a Peremptory Exception of Prescription and Motion to Remand with this Court, which was denied on June 24, 2011.
 

 
 *150
 
 STANDARD OF REVIEW
 

 “[T]he trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review.”
 
 London Towne Condo. Homeowner’s Ass’n v. London Towne Co.,
 
 2006-401, p. 4 (La.10/17/06), 939 So.2d 1227, 1231 (citing
 
 Carter v. Haygood,
 
 04-0646 (La.1/19/05), 892 So.2d 1261, 1267). Pursuant to this standard, “a factual finding cannot be set aside unless the appellate courts finds that it is manifestly erroneous or clearly wrong.”
 
 London Towne Condo. Homeowner’s Ass’n,
 
 p. 4, 939 So.2d at 1231 (citing
 
 Smith v. Louisiana Dept. of Corrections,
 
 93-1305 (La.2/28/94), 633 So.2d 129, 132;
 
 Stobart
 
 v.
 
 State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989)). Appellate courts should not re-weigh the evidence or substitute its own factual findings.
 
 Id,.; Pinsonneault v. Merchants & Farmers Bank & Trust Co.,
 
 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Likewise, “[w]here there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.”
 
 Id.
 

 Where one or more legal errors interdict the trial court’s fact-finding process, however, and such errors are prejudicial, the manifest error standard becomes inapplicable, and the appellate court must conduct its own
 
 de novo
 
 review of the record.
 
 South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent To Own, Inc.,
 
 2007-0599, p. 4 (La.App. 4 Cir. 2/27/08), 980 So.2d 89, 93,
 
 writ denied,
 
 2008-0684 (La.4/18/08), 978 So.2d 355. “Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.”
 
 Id.
 

 DISCUSSION
 

 Appellant Eugene Molinary sets forth two assignments of error for our review. First, Appellant argues that the trial court erred in allowing the trial to proceed on September 8, 2009, despite the fact that neither Appellant nor his counsel was present at trial. Second, Appellant maintains that the trial court correctly found that Appellee’s causes of action against him had prescribed and properly ruled that an exception of prescription could not be supplied for him by the court; however, Appellant submits that it was nevertheless error for the trial court to allow the trial to proceed.
 

 [^Specifically, Appellant argues that he should have been served with a notice of trial, although he concedes that notice was served on his counsel of record, Victor J. Dauterive.
 
 [6]
 
 A review of the transcript indicates that the trial court denied a Motion to Withdraw that was filed by Mr. Dauterive.
 
 [7]
 
 Appellant concedes that Mr. Dauterive indicated in a recorded message played for the court
 
 [8]
 
 that Appellant was
 
 *151
 
 aware of the trial date, but insists that Mr. Dauterive did not notify him of the trial date and that no call was placed to him on the date of trial. Appellant objects to the use of his deposition testimony at trial in his absence, as well as his missed opportunity to call his own witnesses or cross-examine any other party’s witnesses. Appellant further asserts that Chef Ment-eur’s claims are prescribed for the reasons articulated by the trial court.
 

 We find that the lower court erred in proceeding to trial under these particular facts and circumstances. This Court has previously held that service of the notice of the trial date on counsel of record satisfies the due process right to notice of trial;
 
 [9]
 
 however, our brethren in the First Circuit have acknowledged that “[ajdequate notice is one of the most elementary requirements of procedural due process; it is fundamental to our system of laws that there be notice prior to trial, |9except in extraordinary cases, such as executory process.”
 
 Davis v. Dunn & Bush Const.,
 
 2001-2472 (La.App. 1 Cir. 8/20/03), 859 So.2d 155, 158.
 

 Likewise, “[d]ue process at a minimum requires deprivation of life, liberty, or property be preceded by notice and an opportunity to be heard at a meaningful time.”
 
 Spiers v. Roye,
 
 2004-2189 (La.App. 1 Cir. 8/8/07), 965 So.2d 489, 494 (citing
 
 Zachary Taylor Post No. 3784 v. Riley,
 
 481 So.2d 699, 701 (La.App. 1st Cir.1985)). The
 
 Spiers
 
 court further recognized that “[t]he trial of a case is unquestionably one of the meaningful occasions at which the parties must be given an opportunity to be heard, and adequate notice thereof is one of the most fundamental requirements of procedural due process.”
 
 Id.
 

 When an attorney moves to withdraw, as in this case, a trial court is responsible for either notifying the litigant of a pending trial or confirming with the withdrawing attorney that the litigant has been notified
 
 in writing
 
 of the trial date:
 

 When a trial court provides written notice of a trial date to the attorney of record, but the attorney thereafter moves to withdraw as attorney of record, the trial court bears the responsibility of ensuring that the litigant receives notice of the pending trial in writing. The court can satisfy this notice requirement by reissuing the notice of trial to the unrepresented litigant directly. Otherwise, the court must receive reasonable proof that the withdrawing attorney has notified the client in writing of the trial date. This can be accomplished by attaching to the motion to withdraw a certified letter to the client or other evidence indicating the client has received unequivocal written notice of trial. If the record demonstrates that a litigant did not receive notice of trial, then he was denied procedural due process and fundamental fairness.
 

 Davis v. Dunn & Bush Const.,
 
 2001-2472, pp. 3-4 (La.App. 1 Cir. 4/9/03), 858 So.2d 451, 453 (citing La. C.C.P. art. 1571);
 
 see also Metro Gaming & Amusement Co. v.
 
 
 *152
 

 The Deckbar & Grill, L.L.C.,
 
 2007-546, p. 7 (La.App. 5 Cir. 12/11/07), 972 So.2d 1264, 1268.
 
 [10]
 

 In this case, the trial court had actual knowledge that counsel for Appellant, for whatever reason, was under the impression that he had withdrawn from the case. The only evidence before the court that Appellant was aware of the trial date at all was a voicemail message purportedly left by his counsel to opposing counsel. Additionally, the record before us does not evidence that Appellant was notified in writing of the trial date. Thus, under these particular facts and circumstances, it was error for the lower court to proceed to trial and cast Appellant in judgment.
 
 See id.
 

 Furthermore, the trial court explicitly determined that the claims against Appellant were prescribed, noting that Appellant was cast in judgment simply because he had not re-urged his exception of prescription, which had initially been denied by the trial court. As previously noted herein, Appellant was deprived of the opportunity to do so, as neither Appellant nor his counsel was present at trial to re-urge the exception. Appellant has properly preserved his exception of prescription on appeal, as he filed his exception with this Court prior to submission of the case for a decision pursuant to La. Code Civ. Proc. art. 2163.
 
 [11]
 
 Considering the record in its entirety, we cannot say that the trial court’s factual determination that Appellee’s claims against Appellant were prescribed is manifestly erroneous or clearly wrong.
 
 See London Towne Condo Homeowner’s Ass’n,
 
 2006-401, p. 4, 939 So.2d at 1231. Accordingly, the provision of the trial court’s judgment ^awarding damages against Eugene Molinary is reversed, and all claims against Eugene Mol-inary are dismissed.
 
 See
 
 La.Code Civ. Proc. art. 2164 (providing in part that “[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.”).
 

 CONCLUSION
 

 For the foregoing reasons, the trial coui't’s judgment in favor of Chef Menteur and against Eugene Molinary is reversed, and all claims against Eugene Molinary are hereby dismissed.
 

 REVERSED IN PART AND RENDERED
 

 [1]
 

 . The asbestos containing materials consisted of roofing materials such as roofing slate, bricks and cement. Appellant asserts that trespassers and other people had also been dumping materials in the area. Stephen Vignes, a project manager for Insulation Technologies, Inc., the company that performed the asbestos remediation, testified at trial that during his inspection of the property, he observed the presence of asbestos roof shingles both on land and in the water. William Scott, accepted by the court as an expert in hazardous and toxic material management, testified that such materials are regulated by the LDEQ as both Category I and Category II non-friable regulated asbestos-containing materials; accordingly, the LDEQ regulations mandate that Category II materials must be disposed of in a LDEQ approved disposal facility and cannot be handled as construction debris.
 
 See also
 
 La. Admin Code. tit. 33, pt. Ill, § 5151; La. Admin Code. tit. 33, pt. VII,
 
 *148
 
 § 315. The LDEQ report dated July 18, 2002 indicates that sample testing results evidenced the material to be 40% chrysotile asbestos. The asbestos-containing materials were ultimately disposed of in an approved solid waste landfill in Mississippi.
 

 [2]
 

 . The language in the May 2002 lease (signed September 5, 2002) provided that "This lease is conditional upon the tenant removing the asbestos contamination presently existing on this leased property.”
 

 [3]
 

 . Article 927 provides as follows:
 

 A. The objections which may be raised through the peremptory exception include but are not limited to the following:
 

 (1) Prescription.
 

 
 *149
 
 (2) Peremption.
 

 (3) Res judicata.
 

 (4) Nonjoinder of a party under Articles
 

 641 and 642.
 

 (5) No cause of action.
 

 (6) No right of action, or no interest in the plaintiff to institute the suit.
 

 (7) Discharge in bankruptcy.
 

 B. The court may not supply the objection of prescription, which shall be specially pleaded. The nonjoinder of a party, per-emption, res judicata, the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, or discharge in bankruptcy, may be noticed by either the trial or appellate court on its own motion.
 

 La.Code Civ. Proc. Ann. art. 927 (emphasis added).
 

 [4]
 

 . Chef Menteur concedes that it stipulated at trial that provisions (G) and (H) of La. R.S. 30:2276 preclude the applicability of the statute (and its prescriptive period) to the asbestos-containing materials on the property.
 

 [5]
 

 . Eugene Molinary was assessed fifty percent fault; Glenn Sandrock and Gary Sandrock were each assessed twenty-five of the fault. Chef Menteur was awarded costs, as well as $150.00 for the cost of Eugene Molinary's deposition, and $1,190.00 for expert fees for W.D. Scott, a contractor who performed asbestos remediation on the property. The trial court denied Glenn and Gary Sandrock's cross-claims against Eugene Molinary, dismissing all claims, and denied a motion for limited new trial filed by Gary Sandrock.
 

 [6]
 

 . Appellant did not file a written request for notice of trial pursuant to La. C.C.P. art. 1572.
 

 [7]
 

 . Neither the Motion to Withdraw nor the denial is contained in the appellate record. A review of the trial transcript evidences that before proceeding to trial, the trial court acknowledged that Mr. Dauterive filed a Motion to Withdraw as Counsel, and that it was denied:
 

 On July 14, 2009, I signed a Motion to Withdraw as Counsel denying the same that was filed sometime just before that by V.J. Dauterive, Jr., counsel for Eugene C. Moli-nary, Jr. That motion was denied as this case was set for trial. I knew there had been some difficulty getting it to resolution. I denied the Motion to Withdraw. I have not heard from Mr. Dauterive since or really from any of you until this morning with respect to that matter.
 

 [8]
 

 .The voicemail message, purportedly from Mr. Dauterive to Robert Barnett, counsel for Chef Menteur, was played on the first day of
 
 *151
 
 trial. At the court's request, the court reporter transcribed the voicemail message as follows:
 

 Yes, Robert, this is V.J. Dauterive. It's Thursday morning about 20 minutes after 11:00. I’m returning your phone call on Gene Molinary. I withdrew from that case probably about a month ago. Molinary knows about the trial date. I don’t know if he understands you are the other counsel or not. Give me a call if you need to. [phone number omitted] Thanks. Take care.
 

 [9]
 

 .
 
 See Jackson v. Tyson,
 
 526 So.2d 398, 400 (La.App. 4 Cir. 1988).
 

 [10]
 

 . In both
 
 Davis
 
 and
 
 Metro Gaming,
 
 the attorney's motion to withdraw was granted by the court.
 

 [11]
 

 . Article 2163 provides in part that "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.” La.Code Civ. Proc. art. 2163;
 
 see also
 
 Uniform Rules— Courts of Appeal, Rule 1-3. Although a motion panel denied Appellant’s motion to remand his exception of prescription to the trial court, the merits of Appellant's prescription claim were not addressed by the motion panel.