853 So.2d 651 (2003)
Lisa S. GRANT
v.
TULANE UNIVERSITY and Coastal Catalyst Technology, Inc.
No. 2002-CA-0848.
Court of Appeal of Louisiana, Fourth Circuit.
April 23, 2003.
Order on Rehearing September 4, 2003.
Clayton M. Connors, Leblanc & Waddell, Chalmette, LA, and Perry M. Nicosia, Murray Law Firm, New Orleans, LA, and Eileen McCarthy Brown, New Orleans, LA, for Plaintiff/Appellant.
Joseph H. Hart, IV, Lawrence E. Abbott, Abbott, Simses & Kuchler, New Orleans, LA, for Defendant/Appellee, Coastal Catalyst Technology, Inc.
Joseph J. Lowenthal, Jr., Rachel G. Webre Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Defendant/Appellee, The Administrators of the Tulane Educational Fund d/b/a Tulane University.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS Sr., Judge MICHAEL E. KIRBY).
*652 MICHAEL E. KIRBY, Judge.
Plaintiff, Lisa S. Grant, appeals the trial court's judgment granting the exception of prescription filed by defendants Coastal Catalyst Technology, Inc. and Tulane University, and dismissing plaintiff's claims against defendants. We affirm.
On October 17, 2000, plaintiff filed a petition for damages against Tulane University ("Tulane"), Coastal Catalyst Technology, Inc. ("Coastal") and their insurers. Plaintiff alleged in her petition that between 1992 and 1995, she was a chemical engineering student at Tulane and was employed by Tulane's Chemical Engineering Department as a lab and/or research assistant from 1992 to 1994. She further alleged that during that time, she was assigned to a lab project conducted by Tulane and Coastal, in which her assignment was to remove metal deposits from a spent catalyst that had been used in cracking units to break down crude oil into shorter hydrocarbon chains. Plaintiff alleged that Tulane and Coastal knowingly and intentionally failed to provide her with proper documentation as to the dangers and health consequences of working with and around the chemicals used during the process of removing metal deposits from a spent catalyst. She alleged that during her work as a research assistant, she was exposed to unreasonably dangerous amounts of toxic and carcinogenic chemicals, and was subjected to progressive heavy metal poisoning causing her injuries.
According to plaintiff's petition, she was not informed of her exposure to toxic chemicals until on or about October 26, 1999, when she received test results from a physician confirming that she had sustained heavy metal poisoning. She alleged that Tulane and Coastal negligently failed to provide her with a safe place to work, and are liable to her for the intentional tort of battery and for punitive damages. She also alleged that Coastal is strictly liable for her injuries.
On October 4, 2001, Coastal filed an exception of prescription, arguing that plaintiff was aware of her alleged damages, the alleged tortious conduct and the alleged connection between the two over six years prior to filing her petition for damages. On October 17, 2001, Tulane joined with Coastal in excepting to plaintiff's petition on grounds that her cause of action prescribed. Tulane adopted the reasons asserted by Coastal in its memorandum for dismissal of plaintiff's claims. Plaintiff opposed the exception of prescription, arguing that she had no knowledge of toxic exposure until October 26, 1999. She further argued that under the doctrine of contra non valentem, her petition for damages was timely filed.
After a hearing on November 30, 2001, the trial court rendered judgment on December 11, 2001 granting the exceptions of prescription filed by Tulane and Coastal, and dismissing plaintiff's claims with prejudice. Plaintiff now appeals.
On appeal, the plaintiff argues that the trial court erred in granting defendants' exception of prescription and dismissing her claims. She listed the issues presented as (1) whether the petition for damages was prescribed on its face; (2) whether the trial court erroneously shifted the burden of proof with regard to prescription to the plaintiff; and (3) whether the doctrine of contra non valentem is applicable in this case.
A party generally must assert a delictual claim within one year from the date the injury or damage is sustained. La. C.C. art. 3492. Hoerner v. Wesley-Jensen, 95-0553, p. 3 (La.App. 4 Cir. 11/20/96), 684 So.2d 508, 510. When it is not obvious from the face of the petition that the claim is prescribed, the burden *653 rests on the defendant or party pleading prescription. Stett v. Greve, 35,140, pp. 7-8 (La.App. 2 Cir. 2/27/02), 810 So.2d 1203, 1208. However, if the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred. Lima v. Schmidt, 595 So.2d 624 (La.1992).
Under the judicially created doctrine of contra non valentem, prescription is suspended (1) when there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) when there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of this cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Landry v. Blaise, XXXX-XXXX (La.App. 4 Cir. 10/23/02), 829 So.2d 661, citing Corsey v. State of Louisiana, Through the Department of Corrections, 375 So.2d 1319, 1321-22 (La.1979).
Plaintiff claims that the fourth category of the contra non valentem doctrine, commonly referred to as the discovery rule, applies in this case. Under this category, prescription is suspended until the plaintiff knows or should know of the damage, the wrongful act and the connection between them. Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211; Hoerner v. Wesley-Jensen, supra. Prescription does not begin to run against a plaintiff who is unaware of the facts upon which his or her cause of action rests unless his or her ignorance is willful, negligent or unreasonable. Hoerner v. Wesley-Jensen, supra. A plaintiff will be deemed to know what he or she could have learned through reasonable diligence. Corsey v. State of Louisiana, Through the Department of Corrections, supra.
We initially note that the transcript of the November 30, 2001 hearing on the exceptions of prescription does not include any statement by the trial court indicating that she found that plaintiff's petition for damages is prescribed on its face or that she shifted the burden of proof to the plaintiff. The transcript is only two pages long, and does not include arguments of counsel or any statements by the trial court regarding burden of proof. The transcript shows that counsel for Tulane identified and introduced into evidence the exhibits attached to the exception of prescription. The trial court stated that it was maintaining the exception, and did not give reasons. Furthermore, the record does not include any written reasons for judgment.
Our review of the petition reveals that plaintiff alleges that she suffered damages from exposure to dangerous amounts of toxic chemicals when she worked in the Tulane chemical lab from 1992 through 1995. Her petition for damages was filed in 2000. The prescriptive period for a tort action is one year, and according to the petition, the allegedly tortious acts of defendants occurred more than one year prior to the filing of the petition. Therefore, plaintiff's petition is prescribed on its face.
Furthermore, we find no merit in plaintiff's argument that the recent Louisiana Supreme Court case of Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502, supports her position that her petition should not be found to be prescribed on its face because it was brought within one year of her alleged discovery of the causal connection between her symptoms and the defendants' conduct. In Campo v. Correa, supra, *654 the Louisiana Supreme Court stated that it granted writs in that case "to resolve a split among the circuits on the issue of whether to consider the date of discovery in determining whether the petition in a medical malpractice action is prescribed on its face, and to examine the correctness vel non of whether the Campos were reasonable in not discovering the alleged malpractice acts sooner than alleged." Id. at p. 6, 828 So.2d at 507 (Emphasis ours.) The Campo v. Correa case addressed the interpretation of special statutory prescriptive periods applicable to medical malpractice actions. The instant case is not a medical malpractice action, and there is no indication in the Campo v. Correa opinion that the holding regarding prescription in that case has application in actions other than those involving medical malpractice claims.
Because the face of plaintiff's petition shows that the prescriptive period elapsed, plaintiff had the burden of establishing that suspension, interruption or renunciation of prescription has occurred. Hoerner v. Wesley-Jensen, supra. All parties filed memoranda prior to the hearing on the exceptions of prescription. At the hearing, the following evidence was introduced by defendants: (1) plaintiff's responses to Coastal's first set of interrogatories; (2) plaintiff's petition for damages; (3) depositions of plaintiff taken on May 18, 2001 and May 21, 2001; and (4) certified medical records from Tulane Student Health Center dated April 28, 1993, April 29, 1993, July 7, 1993, December 6, 1994 and December 13, 1994. Plaintiff offered no evidence.
The evidence offered at the hearing established the following: Plaintiff worked as a research lab assistant through the Tulane chemical engineering department on a joint project conducted by Tulane and Coastal from August 1991 through October 1993. She knew that the purpose of her assignment was to remove nickel and vanadium from the spent catalyst. In April 1993, plaintiff sought medical treatment and complained of nausea and vomiting, including vomiting blood. Her symptoms persisted and she underwent diagnostic testing.
While still working at the lab, plaintiff went to the Tulane Student Health Center in July 1993 after learning from a poison control center that nickel and vanadium can cause the symptoms that she was experiencing. Plaintiff asked to be tested for nickel and vanadium poisoning. The record includes a physician's note from July 7, 1993 indicating that plaintiff would be tested for vanadium and nickel poisoning, but the record does not include the results of those tests. Although plaintiff alleges that those test results were negative, a medical report from Tulane Student Health Center shows that plaintiff visited a Dr. Mushatt in December 1994, over one year after she left the lab, and told Dr. Mushatt that her medical history included vanadium poisoning.
In arguing that the doctrine of contra non valentem suspended the prescriptive period in this case, plaintiff argues that she did not know and could not have reasonably known that she had heavy metal poisoning until October 26, 1999 when Dr. Charles Mary allegedly related plaintiff's symptoms to her exposure to lead, cadmium, antimony, vanadium and nickel. The only evidence in the record of Dr. Mary's diagnosis is found in plaintiff's depositions. The record does not contain any records, reports or deposition testimony of Dr. Mary.
Until October 26, 1999, plaintiff claims that her short-term and long-term symptoms of metal poisoning were not sufficient enough to put her on notice that a tort had been committed against her or to allow her *655 to appreciate the possible connection between her symptoms and the exposure to chemicals at the defendants' lab. Plaintiff acknowledges that she underwent testing for nickel and vanadium poisoning at her request in July 1993, but she alleges that the tests were negative, and that those results dismissed her suspicions that her exposure to nickel and vanadium could have caused her symptoms.
However, one and one-half years later in December 1994, plaintiff related to Dr. Mushatt a history of vanadium poisoning when she sought treatment for her recurring symptoms. The medical records show that plaintiff associated her symptoms with her exposure to chemicals at defendants' lab in July 1993 and again in December 1994.
We conclude that the evidence introduced at the hearing on the exceptions of prescription established that plaintiff knew or should have known of a causal connection between defendants' allegedly tortious conduct and the manifestation of her injuries more than one year before she filed suit on October 17, 2000. Plaintiff did not carry her burden of proving that the doctrine of contra non valentem suspended the running of prescription until October 26, 1999. Accordingly, we find that the trial court was not manifestly erroneous in maintaining the exceptions of prescription filed by Coastal and Tulane.
For the reasons stated above, we affirm the trial court's judgment maintaining the exceptions of prescription filed by Coastal and Tulane, and dismissing plaintiff's petition.
AFFIRMED.

ORDER
The application for rehearing filed by plaintiff/appellant Lisa S. Grant is denied on the merits. Plaintiff/appellant's motions to supplement the record are denied. Defendants/appellees The Administrators of the Tulane Educational Fund d/b/a Tulane University and Coastal Catalyst Technology's motion to dismiss plaintiff/appellant's application for rehearing as untimely is denied. Defendant/appellee The Administrators of the Tulane Educational Fund d/b/a/ Tulane University's motion to substitute the first page of the pleading filed on June 16, 2003 in order to correct a clerical error is granted.
/s/ Michael E. Kirby
JUDGE MICHAEL E. KIRBY
/S/ James F. McKay III
JUDGE JAMES F. McKAY III
/s/ Dennis R. Bagneris Sr.
JUDGE DENNIS R. BAGNERIS SR.