975 So.2d 104 (2008)
Toxie H. STANFORD.
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND d/b/a Tulane University Health Science Center (Tulane) and Mercedes Bordelon Whitecloud, Independent Executrix of the Estate of Thomas S. Whitecloud, III (Deceased), et al.
No. 2007-CA-0678.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 2008.
Rehearing Denied February 12, 2008.
*105 Patrick H. Hufft, Hufft & Hufft, APLC, and Charles G. Justice, III, New Orleans, LA, for Plaintiff/Appellant.
Stewart E. Niles, Jr., Karen M. Fontana, Niles, Bourque & Fontana, L.L.C., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
Toxie H. Stanford ("Stanford")[1] timely appeals the dismissal of his medical malpractice action on an Exception of Prescription filed by the defendants, the Administrators of the Tulane Educational Fund d/b/a Tulane University Health Science Center ("Tulane") and the Succession of Thomas S. Whitecloud, III. For the reasons that follow, we affirm the trial court's dismissal.
Factual Background
On 17 May 1988, Stanford underwent thoracic disc excision surgery of a T7-T8 disc herniation, which he contends was improperly performed by Thomas S. Whitecloud, M.D. ("Dr. Whitecloud"), at Tulane University and Clinic ("Tulane"). Following surgery, Stanford continued follow-up treatment with Dr. Whitecloud until the spring of 1999. During those 11 years post-surgery, Stanford alleged that he remained symptomatic and experienced ongoing pain, which he contends Dr. Whitecloud should have recognized as complications from the improperly performed surgery in 1988. Despite his continuous suffering, Stanford did not file a request for a medical review panel until 28 February 2002. Thereafter, on 10 January 2005, Stanford filed the instant malpractice action against Dr. Whitecloud and Tulane. All allegations of negligence contained in Stanford's request for a medical review panel and his subsequent petition for damages relate to the surgery performed 14 years earlier in 1988.
Tulane and Dr. Whitecloud filed a peremptory exception of prescription. Following hearings held on 27 January and 3 February 2006, judgment was entered in favor of the defendants on 6 February 2006, dismissing Stanford's medical malpractice *106 action against Tulane and Dr. Whitecloud. In oral reasons for judgment, the trial court concluded that the suit had prescribed because it was filed more than one year from the date of Stanford's surgery on 17 May 1988. The court further reasoned that, regardless of the date the alleged negligent act was discovered, all malpractice actions must be filed within three years of the date of the alleged act, and because more than three years had passed since the 1988 surgery, the filing of Stanford's claim in 2002 was prescribed. Stanford timely appealed.
La. R.S. 9:5628 delineates the time limitations applicable to the filing of medical malpractice actions. It provides, in pertinent part:
A. No action for damages, injury or death against a physician [or] hospital . . . duly licensed under the laws of this state . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
As a general rule, the party pleading prescription bears the burden of proving the plaintiffs claim has prescribed; however, when a claim has prescribed on its face, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted. In re Medical Review Panel for the Claim of Moses, 00-2643, p. 6 (La.5/25/01), 788 So.2d 1173, 1177-1178; Grant v. Tulane University, 02-0848, p. 3 (La.App. 4 Cir. 4/23/03), 853 So.2d 651, 652-653. Stanford's malpractice claim was commenced nearly 14 years after his thoracic surgery was performed by Dr. Whitecloud. Thus, because Stanford's claim was prescribed on the face of his petition, he bore the burden of establishing that prescription on his medical malpractice action had been suspended or interrupted.
In this regard, Stanford argues that, for three reasons, the doctrine of contra non valentem agere nulla currit praescripto ("contra non valentem") is applicable in this case thereby suspending the time limitations for filing his claim as set forth in La. R.S. 9:5628.[2] Specifically, Stanford avers: (1) Tulane and/or Dr. Whitecloud intentionally concealed from him that the reason for his continuous pain post-surgery was the result of Dr. Whitecloud's negligently performed 1988 surgery, and that this concealment "effectually prevented [Stanford] from availing himself of his cause of action;" (2) Dr. Whitecloud negligently failed to recommend additional surgery or to suggest a second opinion during the entire 11-year post-surgery physician-patient relationship, thereby suspending the running of prescription during the existence of the physician-patient relationship, which did not end until 3 March 1999; and/or (3) his physician-patient relationship and continuous treatment *107 with Dr. Whitecloud and Tulane effectively prevented him from learning and availing himself of his cause of action until July 2001, when Stanford underwent additional MRI testing and diagnosis with a second physician.[3]
We find that the Louisiana Supreme Court's recent decision in Borel v. Young, 07-0419 (La.11/27/07), ___ So.2d ___, 2007 WL 4171208, is dispositive as to whether the doctrine of contra non valentem applies to Stanford's claim. According to Borel, it does not. Having made this determination, we pretermit a discussion of the merits of Stanford's contentions regarding Dr. Whitecloud's purported intentional concealment and/or Dr. Whitecloud's allegedly preventing Stanford from availing himself of his cause of action.
In Borel, the Supreme Court determined the "seminal issue" of whether La. R.S. 9:5628 is peremptive[4] and, therefore, not susceptible of suspension, interruption, or renunciation for any reason, or prescriptive.[5] In Borel, the deceased patient's family brought a medical malpractice action in 2002, naming the medical center where she underwent surgery for ovarian cancer in August 1999, as the sole defendant. Two years after filing suit, during the deposition of the medical center's expert, the plaintiffs learned for the first time that the medical treatment provided by two of Mrs. Borel's physicians may have fallen below the applicable Standard of care. Thereafter, the plaintiffs filed a motion to amend their petition to name the two physicians, which the trial court denied. The plaintiffs, therefore, filed a separate lawsuit in 2005 against the two physicians and their insurer, asserting they jointly, severally and in solido with the medical center were negligent in their treatment of Mrs. Borel in August 1999. One of the doctors and his insurer filed an exception of prescription. The plaintiffs argued in response that the filing of their suit against the medical center, a joint tortfeasor, interrupted prescription as to all other joint tortfeasors, including the two doctors and their insurer. See Borel, p. 2, ___ So.2d at ___.
The district court granted the doctor's exception finding that the plaintiffs' claims against the doctor were preempted under La. R.S. 9:5628(A), as the negligent act complained of occurred in 1999 and suit was not filed until 2005, six years later. On appeal, the Third Circuit Court of Appeal, while finding that both the one-year and three-year time provisions contained in La. R.S. 9:5628 were prescriptive, affirmed the district court's granting of the exception dismissing plaintiffs' claims, but for different reasons. Borel, p. 3, ___ *108 So.2d at ___;[6]see Borel v. Young, 06-352, 06-353 (La.App. 3 Cir. 12/29/06), 947 So.2d 824. The plaintiffs sought a writ of certiorari from the Supreme Court, which was granted.
In addressing the issue of whether the three-year time limitation contained in La. R.S. 9:5628 is prescriptive or peremptive, the Borel Court noted its prior decision in Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 723 (La.1986), wherein it held that both the one-year and three-year time limitations set forth in the statute were prescriptive and, therefore, were potentially susceptible to interruption or suspension. Borel, p. 4, ___ So.2d at ___. However, the Court further noted that, within a year of its handing down the Hebert decision, the Louisiana Legislature amended and reenacted La. R.S. 9:5628 by passing 1987 La. Acts No. 915, and that the amendment changing the wording of the statute,[7] in effect, changed the law. Id. The Court recognized, however, that it had never addressed the effect of the 1987 amendments and reenactment of the statute. Id. Thus, in analyzing the Legislature's changing in the wording of the statute in Borel the Court stated:
The plain language of [La. R.S. 9:5628] as reenacted by 1987 La. Acts No. 915 does clearly indicate the Legislature's intent that the three-year time period is preemptive, i.e., an extinguishment of the right upon a lapse of a specified period of time: "No action . . . shall be brought unless filed within one year . . .; however, even as to claims filed within one year . . . of such discovery, in all events such claims shall be filed at the latest within . . . three years . . ." See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law §§ 10.05, 10.06, n. 12 (2006 ed.); see also Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120 (describing the time limitations contained in [La. R.S. 9:5628] as "special prescriptive and peremptive periods for malpractice actions"). The use of the word "shall," which must be interpreted as a mandatory provision, see [La. R.S. 1:3], lends further credence to this conclusion. The language used in this particular three-year statutory time limitation does easily admit on its face of a conclusion as to its preemptive nature. Therefore, the plain meaning of this legislation, which is conclusive, clearly indicates both the intent and the purpose of the Legislature in reenacting [La. R.S. 9:5628] to extinguish actions for medical malpractice after the lapse of three years from the date of the alleged act, omission or neglect, i.e., to limit the duration of the right to bring a *109 medical malpractice claim. Accordingly, there can be no doubt from the clear, and unambiguous language of the statute that it was the intent of the Legislature to set forth a precise peremptive period to govern the filing of medical malpractice suits against specific health care providers. [Emphasis in original.]
Borel, p. 7, ___ So.2d at ___.[8] Applying their analysis of the Legislature's actions to the facts before it, the Borel Court held:
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, we find [La. R.S. 9:5628] establishes a preemptive period.
Borel, p. 7, ___ So.2d at ___. Accordingly, because the plaintiffs' action against the doctor was brought more than three years after the alleged act of malpractice, the Borel Court held that, under La. R.S. 9:5628, their claim was extinguished by preemption.
Similarly, in the case at bar, Dr. Whitecloud performed surgery on Stanford in May 1988. Stanford's medical malpractice claim arising out of the surgery was first made on 28 February 2002, almost 14 years later. The instant lawsuit was not filed until 2005. Therefore, applying La. R.S. 9:5628 to Stanford's petition, and considering the Supreme Court's holding in Borel v. Young, supra, we find that Stanford's malpractice action against Dr. Whitecloud and Tulane is extinguished by preemption and, accordingly, is not susceptible of suspension, interruption, or renunciation for any reason, including contra non valentem.
Continuous Tort Theory
As an alternative to his argument that prescription on his malpractice claim was suspended by the doctrine of contra non valentem, Stanford contends that as a result of Dr. Whitecloud's malpractice and failure to properly treat his true condition (i.e., the improperly performed surgery or negligent post-surgical complications), he was continuously prescribed narcotic pain medication to which he became addicted. Stanford avers that this continuous and cumulative prescribing of pain medication by Dr. Whitecloud causing his addiction to narcotics constitutes a continuing tort sufficient to enlarge the three-year prescriptive period. Essentially, Stanford argues that because of Dr. Whitecloud's improperly performed surgery and/or his failure to take corrective measures following the surgery, he had to continuously prescribe addictive narcotic medications to control his ongoing pain during the 11 years of post-surgical treatment, resulting in his becoming addicted to narcotic pain medication. Stanford avers that prescription on his claim, therefore, did not commence to run in May 1988 at the time of surgery, but rather, commenced on 3 March 1999  the date upon which Dr. Whitecloud and/or Tulane last prescribed addictive narcotic medication and when Stanford ceased treatment with Dr. Whitecloud and Tulane. Stanford contends, therefore, that the filing of his complaint on 28 February 2002 was in fact timely: within "three years from the date of the [last] act, omission, or neglect." We disagree.
In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage. South Central Bell Tel. Co. v. Texaco, Inc., 418 *110 So.2d 531, 533 (La.1982). Thus, in the case sub judice, for Stanford's argument to prevail, we must find on the record before us that Dr. Whitecloud's prescribing of narcotic pain relievers over an 11-year period rises to the level of a continuing tort resulting in continuous damage. We find that it does not.
Pretermitting any discussion as to whether Dr. Whitecloud's prescribing narcotic pain medication constitutes a continuous tort, other than Stanford's self-diagnosis of drug addiction, and the affidavit of Bert Bratton, M.D., suggesting that Stanford had become "significantly dependent" on narcotic medication, no evidence exists in the record that Stanford was actually chemically dependent on narcotic pain medication or otherwise continuously damaged. No evidence in the record is present showing a medical diagnosis of drug addiction; neither is any evidence present of even a recommendation for treatment of a drug addiction. Accordingly, we find that absent evidence of continuous damage sustained by Stanford, his allegation of a continuing tort theory for purposes of tolling prescription in this case must fail. See In re Jenkins, 06-0566 (La.App. 4 Cir. 11/15/06), 945 So.2d 814; In re Medical Review Panel of Vaidyanathan, 98-0289 (La.App. 4 Cir. 9/23/98), 719 So.2d 604; In re Medical Review Panel of Morgan, 98-1001, 98-1002 (La.App. 4 Cir. 12/16/98), 727 So.2d 536.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] After this appeal was lodged, Stanford departed this life. Michael Stanford, the natural child of Stanford, has been substituted as the party plaintiff in this matter.
[2] In Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1321 (La. 1979), the Supreme Court, addressed the doctrine of contra non valentem, defining four scenarios where prescription would be suspended. Stanford's argument is predicated on categories three and four of the doctrine, which provide: (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably known by the plaintiff, even though his ignorance is not induced by the defendant.
[3] Stanford filed his complaint in July 2001, within six months of discovering the alleged malpractice.
[4] Peremption is a period of time fixed by law for the existence of a right, and unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. Thus, preemption is a period of time, fixed by law, within which a right must be exercised or be forever lost. Borel v. Young, p. 5, ___ So.2d at ___. Consequently, preemption may not be renounced, interrupted, or suspended. Id.; La. C.C. art. 3461.
[5] Prescription merely prevents the enforcement of a right by action, but does not terminate the natural obligation. Further, as an inchoate right, prescription may be renounced, interrupted, or suspended, and contra non valentem applies as an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Borel v. Young, p. 5, ___ So.2d at ___, 2007 WL 4171208; State Bd. of Ethics v. Ourso, 02-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349; Hebert v. Doctors Memorial Hasp., 486 So.2d 717, 723 (La.1986).
[6] Relying on Hebert v. Doctors Memorial Hosp., supra, the appellate court found both the one-year and three-year time provisions contained in La. R.S. 9:5628 were prescriptive, but that the plaintiffs' claims against the doctor and his insurer were nevertheless time-barred under the more specific time provisions of La. R.S. 40:1299.47(A)(2)(a). Specifically, the plaintiffs had until 29 January 2003, to bring the new defendants, who had previously been named before the medical review panel, into the suit; therefore, their attempt to bring them in on 15 March 2005, was untimely. See Borel, 06-352, 06-353, pp. 16-17, 947 So.2dat 835.
[7] Specifically, regarding the three-year period, in the 1987 amendments to the statute, the Legislature changed the wording from "provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect," to read "however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." [Emphasis supplied.]
[8] Stanford's surgery occurred in March 1988, after the effective date of the 1987 amendment and reenactment of La. R.S. 9:5628.