STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1551

MICHAEL MARTIN MULKEY, SR.

VERSUS

CENTURY INDEMNITY COMPANY, PETROLEUM CASUALTY
COMPANY, JAMES RALPH VANNOY, R.H. BRETZ, RALPH F. HOWE,
AND JOSEPH D. MIDWIKIS

*DATE OF JUDGMENT:*      AUG 0 7 2019


ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 628667, SECTION 23, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE WILLIAM A. MORVANT, JUDGE


* * * * * *

| | |
|---|---|
| Lewis O. Unglesby<br>Baton Rouge, Louisiana | Counsel for Plaintiffs-Appellants<br>Susan Mulkey, *et al.* |
| Wells T. Watson<br>Jake Buford<br>Lake Charles, Louisiana | |
| Tynan Buthod<br>Louis Layrisson, III<br>Benjamin Eric Gonsoulin<br>Houston, Texas | Counsel for Defendant-Appellee<br>Exxon Mobil Corporation |
| James M. Garner<br>Martha Y. Curtis<br>Amanda Russo Schenck<br>New Orleans, Louisiana | Counsel for Defendant-Appellee<br>Century Indemnity Company, as<br>successor to CCI Insurance Company,<br>as successor to Insurance Company of<br>North America |

* * * * * *

BEFORE: WELCH, CHUTZ, AND LANIER, JJ.

Disposition: APPEAL MAINTAINED; JUDGMENT REVERSED.

**CHUTZ, J.**

Plaintiffs-appellants, Susan L. Mulkey, wife of decedent, Michael Martin Mulkey, Sr. (Mulkey), and their major children, Michael Mulkey, Jr., Michelle McCloud, and Mathew Mulkey (collectively appellants), appeal the trial court's judgment sustaining exceptions raising the objection of prescription and dismissing all their claims against Mulkey's former employer, defendants-appellees, Exxon Mobil Corporation (Exxon),[1] and its liability insurer Century Indemnity Company (Century).[2] We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

As noted in our earlier opinion, see *Mulkey v. Century Indem. Co.*, 2016-1119 (La. App. 1st Cir. 4/12/17), 2017 WL 1378234, at *1 (unpublished opinion), writ denied, 2017-1059 (La. 10/9/17), 228 So.3d 746, Mulkey filed this lawsuit on March 3, 2014, alleging that he had worked at Exxon's Scenic Highway facility "on the chemical side" between 1967 and 2002. As a result of his exposure to benzene and benzene-containing products and chemicals, Mulkey averred that he had been diagnosed with acute myelogenous leukemia on March 26, 2013. Mulkey named employees and former employees of Exxon as defendants, contending that "the law [of] executive office liability applies."

After Mulkey died on March 2, 2015 from acute myelogenous leukemia, appellants filed the second amending and supplemental petition, alleging that as his surviving beneficiaries they were entitled to damages for Mulkey's survival action

---

[1] According to the third amended and supplemental petition, when Mulkey applied for work it was through Esso, an Exxon predecessor, for Enjay Chemical, an entity under "the Exxon (Standard Oil) umbrella." The second amended and supplemental petition states that all references to "Exxon" should be deemed to include Mulkey's predecessor employers.

[2] Century self-identifies "as successor to CCI Insurance Company, as successor to Insurance Company of North America." Century was named a defendant in the original petition as an alleged liability insurer for executive officers working for Mulkey's employer who were also named as defendants. In its answers to the petition and its amendments, Century admitted it was an insurance company that conducted business in Louisiana but otherwise generally denied the allegations.

and wrongful death. Plaintiffs named Exxon as a defendant claiming that, as his employer, Exxon was liable for damages that resulted from its intentional exposure of benzene without Mulkey's informed consent while he worked at the Baton Rouge facility.

After the trial court sustained Exxon's peremptory exception raising the objection of no cause of action as to the claims of an intentional tort of battery, this court reversed. See *Mulkey*, 2017 WL 1378234, at *2.[3]

Thereafter, Exxon urged a peremptory exception raising the objection of prescription as to the claim of an alleged intentional battery insofar as appellants' assertion to entitlement of survival action and wrongful death damages. Century also filed an exception of prescription. After a hearing, the trial court sustained the objection and dismissed appellants' claims. This appeal followed.[4]

---

[3] We held that plaintiffs had sufficiently averred allegations of a battery so as to exclude Exxon from the tort immunity it may otherwise have had under the Louisiana Workers' Compensation Act. We noted that under La. C.C.P. art. 856, because malice, intent, knowledge, and other condition of mind of a person cannot be particularized, they may be alleged generally. Thus, we concluded that plaintiffs had set forth sufficient facts to support such a finding should they be able to produce the requisite evidentiary support. *Mulkey*, 2017 WL 1378234, at *2. In reaching this conclusion, we pointed out that in *Carey v. UMC (United Mechanical Contractors)*, 553 So.2d 472 (La. 1989), the Louisiana Supreme Court reversed the trial court's dismissal of a petition for failure to state a cause of action, suggesting that summary judgment was the more appropriate procedural vehicle to dismiss an intentional tort claim against a plaintiff's employer prior to the trial on the merits.

[4] The trial court signed a judgment on August 10, 2018. This court subsequently issued a show-cause order, stating that the August 10, 2018 judgment lacked the specificity required to be a final, appealable judgment since it failed to indicate the scope of the dismissal of appellants' claims. On December 9, 2018, the trial court issued an amended judgment, dismissing all of appellants' claims against Exxon and Century in addition to sustaining the exceptions of prescription. After the record was supplemented with the amended judgment, the appeal was provisionally maintained but the final determination of whether the judgment is the appealable was left to this merits panel. See *Mulkey v. Century Indem. Co.*, 2018-1551 (La. App. 1st Cir. 1/10/2019), at *1-2 (unpublished action). Because the December 9, 2018 judgment dismisses all of appellants' claims against Exxon and Century, it is precise, definite, and certain. See *Laird v. St. Tammany Parish Safe Harbor*, 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So.2d 364, 365. See also *Thompson v. Cenac Towing Co., L.L.C.*, 2018-1282 (La. App. 1st Cir. 4/12/19), 2019 WL 1578170, *1 (unpublished opinion) (an appealable judgment must indicate whether it dismisses all of plaintiffs' claims). Accordingly, we conclude that the December 9, 2018 amended judgment is final, appealable, and properly before us.

## DISCUSSION

As noted by this court in our earlier opinion, a battery is harmful or offensive contact to another done with the intent to cause the person to suffer such a contact. The intention need not be malicious nor need it be an intention to inflict actual damage. *Mulkey*, 2017 WL 1378234, at *2 (citing *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987)). See also La. C.C. art. 2315A ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. La. C.C. art. 3492. The purpose of a prescription statute is to afford a defendant economic and psychological security if a cause of action is not pleaded timely and to protect the defendant from stale claims and the loss of relevant proof. *Borja v. FARA*, 2016-0055 (La. 10/19/16), 218 So.3d 1, 6. Prescription statutes are, however, strictly construed against prescription and in favor of the obligation sought to be extinguished. *Taranto v. Louisiana Citizens Property Ins. Corp.*, 2010-0105 (La. 3/15/11), 62 So.3d 721, 726.

Ordinarily, the party pleading prescription bears the burden of proving the right to bring the claim has prescribed. But when the face of the petition reveals that the plaintiff's right has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended. *London Towne Condo. Homeowner's Ass'n v. London Towne Co.*, 2006-401 (La. 10/17/06), 939 So.2d 1227, 1234. Additionally, a petition should not be found prescribed on its face and, hence, plaintiff should not bear the burden of proving an interruption or suspension of prescription, if it is brought within one year of the date of discovery of the cause of action, the facts alleged with particularity in the petition show that the victim

4

was unaware of the cause of action prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the victim. See *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So.2d 502, 509.

At the trial of a peremptory exception, evidence may be introduced to support or controvert any of the objections pleaded when the grounds thereof do not appear from the petition. La. C.C.P. art. 931; *Bracken v. Payne and Keller Co., Inc.*, 2006-0865 (La. App. 1st Cir. 9/5/07), 970 So.2d 582, 587. If evidence is introduced, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Rando v. Anco Insulations Inc.*, 2008-1163 (La. 5/22/09), 16 So.3d 1065, 1082.

To soften the occasional harshness of prescription statutes, Louisiana courts have recognized a jurisprudential exception to prescription with *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring suit. *Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So.3d 612, 623.

In this case, appellants have brought both survival claims and wrongful death claims. La. C.C. art. 2315.1 grants to designated beneficiaries a right of action to recover the damages that a person suffered and would have been entitled to recover from a tortfeasor had that person lived. Article 2315.1A states, in pertinent part:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of [designated beneficiaries]. ...

5

C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.

This is ordinarily called the survival action or the victim's action. It comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death. The survival action permits recovery only for the damages suffered by the victim from the time of injury to the moment of death and is in the nature of a succession right. *McGee v. A C And S, Inc.*, 2005-1036 (La. 7/10/06), 933 So.2d 770, 780.

La. C.C. article 2315.2 grants to designated beneficiaries the right to recover from a tortfeasor the damages the beneficiaries have suffered when a person has died as a result of a tort. Article 2315.2 states, in pertinent part:

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death: [designated beneficiaries].

B. The right of action granted by this Article prescribes one year from the death of the deceased.

This right of action is ordinarily called the wrongful death action or the beneficiaries' action. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered by them from the moment of death and thereafter. *Walls v. American Optical Corp.*, 98-0455 (La. 9/8/99), 740 So.2d 1262, 1273.

Exxon and Century assert that when Mulkey filed his claim for damages arising from the alleged intentional tort of battery, his cause of action was already prescribed. Thus, they contend appellants' claims for survival action and wrongful death damages are untimely.

The survival action is dependent upon the primary tort victim having a viable cause of action on the date of his death. *Walls*, 740 So.2d at 1274. Consequently, if the cause of action of the primary tort victim has prescribed prior

6

to his date of death, there is no viable action to transfer to his statutorily-designated beneficiaries. *Lennie v. Exxon Mobil Corp.*, 17-204 (La. App. 5th Cir. 6/27/18), 251 So.3d 637, 649, writ denied, 2018-1435 (La. 11/20/18), 256 So.3d 994.

Liberative prescription of one year generally begins to run when the victim knows or should know of the damage, the delict, and the relationship between them. *Branch v. Willis-Knighton Med. Ctr.*, 92-3086 (La. 4/28/94), 636 So.2d 211, 212. La. C.C. art. 3492 is rooted in the recognition that a prescriptive period is a time limitation on the exercise of a right of action, and a right of action in tort comes into being only when the plaintiff's right to be free of illegal damage has been violated. When damages are not immediate, the action in damages thus is formed and begins to prescribe only when the tortious act actually produces damage and not on the day the act was committed. *Bailey v. Khoury*, 2004-0620 (La. 1/20/05), 891 So.2d 1268, 1276 (citing *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992)). See also *Austin v. Abney Mills, Inc.*, 2001-1598 (La. 9/4/02), 824 So.2d 1137, 1149 n.7 (La. 2002), (citing *Owens v. Martin*, 449 So. 2d 448, 449 n.4 (La. 1984)) (where the damage does not occur until sometime after the negligent act, Article 3492 applies, rather than *contra non valentem*, and prescription does not commence until the damage is sustained).

The damage suffered must at least be actual and appreciable in quality -- that is, determinable and not merely speculative. But there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action. Thus, in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has

7

already incurred or incur further damage as a result of the completed tortious act. *Bailey*, 891 So.2d at 1276 (citing *Harvey*, 593 So.2d at 354).

As noted by the Louisiana court, "Insidious disease cases are fundamentally different from ... snapshot torts," *i.e.*, those instances where a plaintiff's injuries occurred within a short period of time. The most significant parameter that distinguishes toxic substance torts is the lengthy latency periods from exposure to clinical manifestation of the disease. *Austin*, 824 So.2d at 1151 n.8 (citing Michael D. Green, *Paradox of Statutes of Limitations in Toxic Substances Litigation*, 76 Cal. L.Rev. 965, 972-73 (1988)). The *Austin* court also pointed out that in *Urie v. Thompson*, 337 U.S. 163, 169-70, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the United States Supreme Court recognized that some of the traditional rationales for statutes of limitation cannot be reasonably applied to latent disease cases when it held that without the use of some methodology to defer the accrual of causes of action in latent disease cases, the use of traditional statutes of limitations to bar toxic tort claims would render the tort cause of action "only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, [the plaintiff] was charged with knowledge of the slow and tragic disintegration of his [body]." *Austin*, 824 So.2d at 1151 n.9.

In *Cole v. Celotex Corp.*, 599 So.2d 1058, 1065-66 (La. 1992) (citing Comment, *Liability Insurance For Insidious Disease: Who Picks Up the Tab?*, 48 Fordham L.Rev. 657, 665 n.46 (1980)), the Louisiana Supreme Court acknowledged the difficulties in cases such as this benzene-exposure, alleged, intentional battery tort case arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, here, the damage results from a continuous process -- a slow development of this hidden disease over the years. Compounding the problem, these cases are

characterized by a lengthy latency period -- typically ranging a decade or two -- and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. The lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. See *Cole*, 599 So.2d at 1065-66 (citing *Porter v. American Optical Corp.*, 641 F.2d 1128, 1133 (5th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); Classen, *An Investigation into the Statute of Limitations and Product Identification in Asbestos Litigation*, 30 How. L.J. 1, 4 (1987)).

Appellants maintain that the allegations of their amended petition and the evidence admitted at the hearing on the prescription exception establish that Mulkey's first knowledge that he had acute myelogenous leukemia was the March 26, 2013 diagnosis. Thus, they contend, he could not bring his claim for the alleged intentional tort of battery until then.

Excerpts of Mulkey's deposition testimony were admitted into evidence by all parties. According to Mulkey, he worked five days a week and between 1967 and 1976 was exposed to benzene every day he worked. He described how during that nine-year period, he worked as an Assistant Operator where his job duties included drawing samples of pure benzene. During the drawing process, he could smell the pure benzene every time he collected a sample. Mulkey also explained that his job required him to tighten the thousands of valves in the unit as they wore down. In a certain light, he could see the benzene vapors emitting which the employees used to refer to as "little monkeys dancing." Mulkey stated that pure benzene did not have an unpleasant odor and agreed that the smell did not provide a warning of the chemical's toxicity.

Mulkey's regular protective gear consisted of leather gloves that he wore for every task. And Exxon required him to wear glasses. According to Mulkey, he was

not required to wear protective gear to avoid benzene inhalation unless he was assigned to an area with high concentrations. He also stated that when there was an abnormal condition, he occasionally wore "small, cartridge, paper-type face masks" as directed by another employee.

Mulkey was subsequently transferred to electrical work but continued to have job duties in the aromatics unit where the benzene was made. Therefore, he continued to smell benzene everyday. He recalled that his exposure periods were longer than 15-minute shifts, explaining that at times he was "out there pretty much all day."

Mulkey testified that the facility had a doctor throughout the 1960s and 1970s and that health monitoring was performed less than once a year. Three "Health Information System-Medical Surveillance Employee Notification" forms, dated between August 1978 and December 1980, were introduced into evidence by all parties. Each form indicated that Mulkey's lab tests were within acceptable range, he had no detected condition, and no additional limitations were placed on his exposure to benzene.

In his deposition, Mulkey stated that he was never advised by the facility doctor or his employer that benzene could give him leukemia or any other cancer. Mulkey said that he relied on his employer to give him health and safety advice. Exxon never told him that benzene exposure could hurt him or that he needed to minimize his exposure to it. And Mulkey was unaware that Exxon had known since the 1950s that benzene exposure caused cancer. There were no warning signs posted in the areas in which he worked, and no documentation was ever provided to Mulkey warning him of the toxic chemicals in the facility. When told that Exxon had a zero exposure policy, Mulkey stated, "That's ridiculous," indicating that in his experience, there was never zero exposure.

Conceding that Exxon told its employees how many parts per million of different products were "not considered good for your health," Mulkey insisted that his employer never advised him that pure benzene was bad or that it caused cancer. He also admitted that by the time he started working in the mechanical area, he realized that benzene "wasn't really too good for you." During his deposition, Mulkey was apparently shown a document from 1981 which explained that Exxon was "going to do this better" than it had done in 1980 when employees were exposed to too much benzene. Mulkey replied, "That could be, yeah." The referenced document was not admitted into evidence.

In oral reasons for judgment, the trial court found that: Mulkey had sufficient knowledge to know he had been battered and had suffered some damage; he knew the exposure to benzene was not good for him and was harmful; and that between 1980 and 1981, he had been told that he had been exposed to too much benzene. The trial court reasoned that "the issue is only the offensive or the harmful conduct without [Mulkey's] consent. The issue is not the result. It can be a battery if no damage occurs or if unintended consequences occur." The trial court opined, "[T]he fact that [Mulkey] couldn't link cancer to the specific ... damages for the purposes of an intentional tort of battery, is not dispositive." Additionally, during argument, the trial court noted as an undisputed fact that Mulkey "was not suffering any symptoms that he linked up to his benzene exposure ... until he was told by the doctor."

Irrespective of which party bore the burden of proof, see *London Towne Condo. Homeowner's Ass'n*, 939 So.2d at 1234; *Campo*, 828 So.2d at 509, based on the evidence admitted by the parties, we find no manifest error in the trial court's findings that he had knowledge of the delict, *i.e.*, that he had ostensibly been battered. Similarly, based on the evidence we have outlined, there is a

11

reasonable factual basis to support the trial court's factual finding that, by the time he began working in the mechanical area, Mulkey was aware that benzene exposure was not good for him. Additionally, however, our review of the evidence shows that the trial court correctly noted that Mulkey was not suffering any symptoms that he associated with the benzene exposure until the March 26, 2013 diagnosis. Thus, the undisputed evidence shows that Mulkey did not know of his damages until March 26, 2013. Thus, while the trial court was correct that Mulkey could not link the cancer to specific damages he had suffered as a result of the alleged intentional tort of battery until he was diagnosed, we disagree with its conclusion that this lack of knowledge was not dispositive of the issue of the timeliness of his claim.

Exxon and Century argued, and the trial court found, that because Mulkey testified that once he started working in the mechanical area, he knew that benzene was not good for him, he had sufficient knowledge to know he had suffered some damage so as to commence the accrual of prescription even if he did not know the full extent of the damage. However, nothing in this record shows exactly what damage Mulkey knew or should have known that he had sustained, *i.e.*, what injuries he had suffered that were not good for his health. Exxon and Century have not pointed to, and we have not found, anything in Mulkey's medical record that signaled that he had in any way been injured or suffered a diminution in health as a result of exposure to benzene. There is simply no evidence to support a finding that Mulkey suffered actual and appreciable damage. <u>See and cf.</u> ***Grant v. Tulane Univ.***, 2002-0848 (La. App. 4th Cir. 4/23/03), 853 So.2d 651, 654, <u>writ denied</u>, 2003-2768 (La. 12/19/03), 861 So.2d 573 (where a research lab assistant who removed nickel and vanadium from a spent catalyst sought persistent medical treatment for complaints of nausea and vomiting blood and advised a doctor that

12

she had vanadium poisoning more than one year before she filed suit, plaintiff knew or should have known of a causal connection between defendants' allegedly tortious conduct and the manifestation of her injuries); *Laughlin v. Breaux*, 515 So.2d 480, 482 (La. App. 1st 1987) (claim of Battered Woman's Syndrome did not preclude plaintiff from filing suit within one year of the first incident of battery where evidence showed she knew she had been injured because she discussed defendant's abusive behavior with friends, notified the police of an altercation with defendant, and sought treatment from a psychologist as well as advice from a counselor).

Moreover, Exxon and Century have not explained how Mulkey should have known of the damages, which he first learned of on March 26, 2013, when he was diagnosed with acute myelogenous leukemia. The parties agree that Mulkey's exposures to benzene ceased in 1982. Today, an internet search can readily supply information on nearly any topic. But between between 1967 and 1982 when Mulkey was exposed to benzene, access to information was significantly limited. The record is devoid of anything to establish Mulkey had any source of information that would have alerted him of the harms of benzene exposure. While Mulkey alleged Exxon actually knew that benzene exposure caused cancer during his employment, Mulkey specifically testified that Exxon did not share that knowledge with him, and the record contains no evidence to the contrary.

Mindful that prescription statutes are strictly construed in favor of the obligation sought to be extinguished, because Mulkey did not know of his damages, *i.e.*, that he had suffered an actual and appreciable injury, until he was diagnosed with acute myelogenous leukemia and, therefore, could not have known of any relationship between the alleged intentional battery and his damages, the undisputed evidence in the record establishes that Mulkey's claim was timely filed

13

on March 3, 2014, within one year from March 26, 2013, the day he sustained actual and appreciable injury or damage. See *Austin*, 824 So.2d at 1149 n.7. Thus appellants' amended petition, filed on June 9, 2015, seeking survival action damages three months after Mulkey's death on March 2, 2015, is not prescribed under Article 2315.1C.[5]

Turning to the timeliness of appellants' wrongful death damages arising from an alleged intentional battery tort, the trial court concluded these claims were prescribed and dismissed appellants' petition. The trial court stated, "I think if the underlying [alleged intentional battery] tort claim has prescribed, then likewise the [wrongful death] claim has prescribed."

In the wrongful death action, the right of action vests at the time of the tort, but the cause of action for wrongful death does not mature until the death of the victim in the case. *Walls*, 740 So.2d at 1274 (citing *Coates v. A.C. & S., Inc.*, 844 F.Supp. 1126, 1131 (E.D. La. 1994)). It is not a derivative cause of action. Rather, the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. *Walls*, 740 So.2d at 1274. Louisiana's wrongful death statute is clear: the relevant injuries do not occur until death, and they are not the primary victim's injuries. Hans J. Germann, *Walls v. American Optical Corp.: Wrongful Death Actions and Long-Latency Occupational Disease*, 74 Tul. L. Rev. 2227, 2236 (2000).

---

[5] Mulkey's original suit, filed against co-employees and executive officers, interrupted prescription. Exxon was added as a defendant in the June 9, 2015 amended petition. Exxon and Century have raised no arguments asserting that the survival action is prescribed because Exxon was not named as a defendant prior to June 9, 2015.

Mulkey died on March 2, 2015. Appellants' claims for wrongful death damages arising out of the alleged intentional tort of battery, filed on June 9, 2015 well within one year from his death, were timely instituted.[6]

## DECREE

For these reasons, the trial court's judgment is reversed.[7] Appeal costs are assessed to defendants-appellants, Exxon Mobil Corporation and Century Indemnity Company.

## APPEAL MAINTAINED. JUDGMENT REVERSED.

---

[6] Appellants request costs and attorney fees suggesting that Exxon's and Century's arguments, that appellants' entitlement to wrongful death damages prescribed prior to Mulkey's death, was unreasonable and in violation of La. C.C.P. art. 863. The ability to impose Article 863 sanctions is limited to the trial court. We cannot address on appeal a request for sanctions that was never properly raised in the trial court. *Trahan v. Trahan*, 2016-0108 (La. App. 1st Cir. 9/16/16), 203 So.3d 447, 454. Accordingly, the relief is denied.

[7] In addition to "adopt[ing] by reference Exxon's brief," Century also urges that "there is no coverage for the claims because insurance coverage is barred for intentional torts." But through our reference to "the alleged" intentional tort of battery, we have emphasized in this opinion, as we held in our earlier opinion, that the issue of whether appellants can produce evidentiary support for their intentional battery claims still has to be adjudicated. See *Mulkey*, 2017 WL 1378234, at *2; see also n.3, *supra*. Thus, without a dispositive determination on whether Exxon is liable to appellants for an intentional tort, Century's request is premature. Additionally, Century has not filed a pleading or otherwise raised the issue of its entitlement to dismissal from this lawsuit on the basis that it provided no coverage for appellants' damages arising out of Exxon's intentional conduct before the trial court. Thus, Century is not entitled to a release from the lawsuit as relief in this appeal.

MICHAEL MARTIN MULKEY, SR.                    2018CA1551

VERSUS                                        COURT OF APPEAL

CENTURY INDEMNITY COMPANY,                    FIRST CIRCUIT
PETROLEUM CASUALTY COMPANY,
JAMES RALPH VANNOY, R.H. BRETZ,               STATE OF LOUISIANA
RALPH F. HOWIE, AND
JOSEPH D. MIDWIKIS

BEFORE:  WELCH, CHUTZ, AND LANIER, JJ.

LANIER, J., CONCURS WITH THE RESULTS, AND ASSIGNS ADDITIONAL REASONS.

I respectfully concur with the analysis of the majority.  However, I write separately to emphasize that the holding in this case narrowly addresses any alleged intentional act or tortious exposure that may have resulted in an occupational disease that occurred from Mulkey's exposure to benzene or other aromatic and cyclic hydrocarbons during his employment with Exxon, such that it would not fall within the jurisdiction of the worker's compensation statute.